THE BOARD OF COUNTY COMMISSIONERS OF D COUNTY v.
F. E. GILLETT.

(Filed Feb. 7, 1900.)

1. MUNICIPAL INDEBTEDNESS—*Limitation of—Includes What.* Section 4
of the act of congress of July 30, 1886, being a limitation upon the
power of a county in this Territory to incur an indebtedness in
any manner and for any purpose in excess of 4 per cent. of the
value of the taxable property therein, to be ascertained by the
last assessment for territorial and county taxes previous to the
incurring of such indebtedness, includes debts incurred by opera-
tion of law, as well as those debts arising from express contracts.

2. SAME—*Action Upon County Warrant—Defense.* Hence a warrant issued
by a county in payment of the salary of the county clerk is within
the prohibition of said act, and it is a good defense to an action
upon such a warrant, that at the time the services were performed
and the warrant issued as an evidence thereof, the indebtedness of
the county was above the maximum limit fixed by the provisions
of said act.

(Syllabus by the Court.)

*Error from the District Court of D County; before John C.
Tarsney, District Judge.*

*John F. Stone* and *George Black,* for plaintiff in error.

*Gillett & Libby* and *George Sexton.* for defendants in
error.

Opinion of the court by

HAINER, J.: This was an action brought in the district
court of D county by the defendant in error, plaintiff in
the court below, against the board of county commis-
—38

sioners of said county, to recover the sum of $184 and costs, upon a county warrant issued to Thomas O'Toole, for salary as county clerk of said county, and subsequently assigned for a valuable consideration to the defendant in error, who was the owner and holder thereof at the commencement of this action.

To the petition of the plaintiff the defendant filed an answer alleging:

1.    "That the said board of county commissioners is not indebted to said plaintiff in any amount whatever, and denies each and every material allegation in said petition contained.

2.    "As a second defense to said action defendant alleges that the territorial board of equalization completed its labors for the year 1893, on the 26th day of July, 1893, and that the assessment then and thereby completed, was the first assessment of said county ever made for the purposes of territorial and county taxation, and that the amount of such assessment for said county was the sum of $80,473.30.

"That the territorial board of equalization completed its labors for the year 1894, on to-wit: the 11th day of July, 1894, then and thereby completing the second annual assessment of said county for purposes of county and territorial taxation.

"That the warrant declared upon was issued subsequent to the first assessment and prior to the second assessment, and the services in payment for which such warrant was issued were rendered between the first day of January, 1894, and the first day of April, 1894.

"That prior to the issuance of such warrant, and prior to the rendering of the services in payment for which such warrants were issued, and prior to September 1, 1892, the said county of D had become indebted in an

amount exceeding $3,218, which said debt was outstanding, due and unpaid at the time the servic.s were rendered for which such warrant was issued and at the time such warrant was issued.

"That at the time such debt was created, there was no cash in the treasury, no taxes·due, levied or payable, and no license taxes due or payable, nor any other funds of any kind or character out of which such warrant or any such prior debt of said county could be paid.

"Wherefore, defendant alleges that the warrant·declared upon in this cause is void as being issued in settlement of and as creating a debt in excess of 4 per cent. of the last annual assessment of said county for the purposes of territorial and county taxation, preceding the creation of such debt, in violation of the provisions of the act of congress approved July 30, 1886, entitled 'An Act to Prohibit the Passage of Local and Special Laws in Territories of the United States, to Limit Territorial Indebtedness, and for Other Purposes.'

3. "That making all the allegations of the preceding paragraphs a part of this paragraph, defendant alleges further:

"That after the completion of said first assessment, and prior to the issuance of the warrant declared upon, and prior to the rendering of the services in settlement of which said warrant was issued, and prior to January 1, 1894, the said county of D had become indebted in an amount exceeding $3,218, which debt was outstanding, due and unpaid at the time such services were rendered, and such warrant was issued. That there was was no cash in the treasury, no taxes levied, due or payable, no license taxes due or payable, and no other funds of any kind or character out of which such warrant or any of such prior debts could be paid. Wherefore, defendant alleges further that the warrant declared upon in this cause is void, as being issued in settlement of and creat-

ing a debt in excess of 4 per cent. of the last annual assessment of said county for the purposes of territorial and county taxation preceding the creation of such debt, and in violation of the act of Congress approved July 30, 1886, entitled 'An Act to Prohibit the Passage of Local and Special Laws in Territories of the United States, to Limit Territorial Indebtedness, and for Other Purposes.'

"Wherefore defendants pray judgment for their costs herein expended."

The plaintiff interposed a general demurrer to the second and third paragraphs of defendant's answer, which was sustained by the court, and the defendant refusing to plead further, the court entered judgment upon the pleadings in favor of the plaintiff. To which ruling and judgment of the court the defendant duly excepted, and brings the case here on a case-made for review.

There is but one question presented to us here in determining the correctness of the ruling of the trial court upon the demurrer to the answer, and that is: Does the federal limit imposed upon county indebtedness by section 4 of the act of congress of July 30, 1886, (24 U. S. Statutes At Large, 177,) include debts incurred by operation of law as well as those arising from express contracts? We think this question must be answered in the affirmative.

Section 4 of said act reads as follows:

"That no political or municipal corporation, county or other subdivision in any of the territories of the United States shall ever become indebted in any manner, or for any purpose, to an amount in the aggregate, including existing indebtedness, exceeding 4 per centum on the value of the taxable property within such corporation, county, or subdivision, to be ascertained by the last as-

sessment for territorial and county taxes, previous to the incurring of such indebtedness; and all bonds or obligations in excess of such amount given by such corporation shall be void."

The subject under consideration has been construed by the supreme court of the United States in several important cases. · Iowa has a constitutional provision which is almost identical with the section now under consideration.

The Iowa constitution ordains:

"That no county, or other political or municipal corporation, shall be allowed to become indebted in any manner or for any purpose to an amount in the aggregate exceeding 5 per cent. on the value of the taxable property within such county or corporation, to be ascertained by the last state and county tax lists previous to the incurring of such indebtedness."

In construing this constitutional provision, in *Doon Tp. v. Cummins*, 142 U S. 366, Mr. Justice Gray said:

"The scope and meaning of this provision of the fundamental and paramount law of the state are clear and unmistakable. No municipal corporation 'shall be allowed' to contract debts beyond the constitutional limit. When that limit has been reached, no debt can be contracted 'in any manner or for any purpose.' The limit of the aggregate debt of the municipality is fixed at 5 per cent. of of the value of the taxable property within it, and that value is to be ascertained 'by the last state and county tax lists,' which are public records, open to all, and of the contents of which all are bound to take notice. The prohibition is addressed to the legislature as well as to all municipal boards and officers, and to the people, and forbids any and all of them to create, or to give binding force, to any debts of the corporation in excess of the limit prescribed."

In construing the constitution of Illinois, which is substantially in the same language as the constitution of Iowa, the supreme court of the United States, in *Buchanan v. Litchfield*, 102 U. S. 278, speaking by Mr. Justice Harlan, said:

"The words employed are too explicit to leave any doubt as to the object of the constitutional restriction upon municipal indebtedness. The purpose of its framers, beyond all question, was to withhold from the legislative department the power to confer upon municipal corporations authority to incur indebtedness in excess of the prescribed amount. No legislation could confer upon a municipal corporation authority to contract indebtedness which the constitution express'y declared it should not be allowed to incur."

This constitutional provision of the state of Illinois was again before the supreme court of the United States, in *Litchfield v. Ballou*, 114 U. S. 190. Mr. Justice Miller, delivering the opinion of the court, said:

"The language of the constitution is that no city, etc., 'shall be allowed to become indebted in any manner or for any purpose to any amount including existing indebtedness, in the aggregate exceeding 5 per centum on the value of its taxable property.' It shall not become indebted; shall not incur any pecuniary liability. It shall not do this in any manner neither by bonds, nor notes, not by express or implied promises. Nor shall it be done for any purpose no matter how urgent, how useful, how unanimous the wish. There stands the existing indebtedness to a given amount in relation to the sources of payment, as an impassible obstacle to the creation of any further debt in any manner or for any purpose whatever. If this prohibition is worth anything, it is as effectual against the implied as the express promise, and is as binding in a court of chancery as in a court of law."

The constitution of Colorado, of 1876, article 11, section 6, provides that the indebtedness contracted in any one year by any county having a valuation of not less than one million dollars, shall not exceed a certain per cent. on its assessed valuation, and that "the aggregate amount of indebtedness of any county for all purposes, exclusive of debts contracted before the adoption of this constitution, shall not at any time exceed twice the amount herein limited." This constitutional provision was construed by the supreme court in *Lake Co. Comrs. v. Rollins*, 130 U. S. 662—an action against Lake county, which was based on a large number of county warrants issued for the ordinary county expenses, such as witness' and jurors' fees, election costs, charge for board of prisoners, county treasurers, commissions, and so forth. The county set up several defenses, but the main defense offered was that of want of authority on the part of the county commissioners to issue the warrants in question, or any of them. It was claimed that section 6, article 11, of the state constitution of 1876, fixes a maximum limit beyond which no county can contract an indebtedness, and the warrants sued on were issued after the time that limit had been reached, and even exceeded, and that they are all for that reason void. The opinion of the supreme court was delivered by Mr. Justice Lamar, who said:

"Defendant in error insists that the interpretation contended for by the county leads to certain absurd consequences, namely, that it is senseless to limit the powers of the county to incur debt generally, since its exercise of such a power may, by sudden exigencies, become imperatively necessary to the discharge of its functions; that it would be to require the county to provide in advance, by taxation or otherwise, for the payment of expenses, which from their nature, can only be guessed at;

that it would be to enable any county in two years, by a vote and a loan, to exhaust the whole possible indebtedness in the way of building roads and bridges, leaving no margin for other necessities; that it would be to destroy the county government, since the county officers and others will not work for nothing, and the margin of possible debt is in nearly all of the counties already reached; and that it would be to avoid nearly all the tax payments heretofore made in warrants. All of these objections could well be answered from the facts as disclosed by the bill of exemptions, but it is not necessary. We cannot say as a matter of law, that it was absurd for the framers of the constitution for this new state to plan for the establishment of its financial system on a basis that should closely approximate the cash basis. It was a scheme favored by some of the ablest of the early American statesmen. Nor can the fact disclosed in the bill of exemptions, that after the adoption of the state constitution the county officials and many of the people, designedly or undesignedly, disregarded the constitutional rule, render the plan absurd. If it was a mistaken scheme, if its operation has proved or shall prove to be more inconvenient than beneficial, the remedy is with the people, not with the court."

After reviewing the Wisconsin and Illinois cases on this subject, the learned justice said:

"In the light of these principles expressed in the authorities quoted, and in many others, we must decline to read the expression in section 6, 'and the aggregate amount of indebtedness of any county for all purposes,' etc., as if it were written 'and the aggregate amount of *such* indebtedness,' etc. This the defendant in error concedes to be necessary to his case. We see no admissible reason for the introduction of this restrictive word *such,* except to alter radically the plain meaning of the sentence. Neither can we assent to the proposition of the court below that there is as to this case a difference between indebtedness incurred by contracts of the county,

and that form of debt denominated 'compulsory obligations.' The compulsion was imposed by the legislature of the state, even if it can be said correctly that the compulsion was to incur a debt; and the legislature could no more impose it than the county could voluntarily assume it, as against the disability of a constitutional prohibition. Nor does the fact that the constitution provided for certain county officers, and authorized the legislature to fix their compensation and that of other officials, affect the question. There is no necessary inability to give both of the provisions their exact and literal fulfillment. In short, we conclude that section .6, aforesaid, is a limitation upon the power of the county to contract any and all indebtedness, including all such as that sued on in this action."

The constitutional provision of Indiana reads as follows:

"No political or municipal corporation in this state shall ever become indebted, in any manner or for any purpose, to an amount in the aggregate exceeding 2 per centum of the value of the taxable property within such corporation, to be ascertained by the last assessment for state and county taxes previous to the incurring of such indebtedness; and all bonds or obligations in excess of such amount, given by such corporation, shall be void."

Under this constitutional provision a municipality cannot incur an indebtedness, where the limit has been reached, even for current expenses, as by issuing an order on its treasury where there are no funds or means provided for its payment, and every indebtedness incurred in any manner or for any purpose in excess of the constitutional limit is within the prohibition. (*Sackett v. City of New Albany,* 88 Ind. 473; *City of Laporte v. Gamewell, etc. Co.,* 146 Ind. 466; *Town of Winamac v. Huddleston,* 132 Ind. 217.)

The supreme court of Colorado in the case of *People 'v. May*, 12 Pac. 838, has laid down the same rule.

In *Rollins v. Lake Co.* 34 Fed. 845, the United States circuit court, for the district of Colorado, held that warrants issued by a county in payment of compulsory obligations, such as fees of witnesses, jurors, constables, sheriffs and the like, are not within the prohibition, and it is no defense upon an action upon such warrants that at the time they were issued the general limit of county indebtedness fixed by the constitution had been reached. But the doctrine enunciated in this case was expressly overruled by the supreme court of the United States in *Lake Co. v. Rollins, supra,* and this case is decisive of the case at bar.

And the views herein expressed are not in conflict with the doctrine enunciated in this court in the case of *Johnson 'v. Board of County Commissioners of Pawnee county*, 7 Okla. 686, and *Hall Lithographing Company v. Commissioners of Roger Mills County*, 8 Okla. 378.

In the Johnson case this court held that:

"Notwithstanding the fact that the indebtedness of the county has reached the federal limit, warrants issued for meeting the current expenses of the county, and in anticipation of the collection of taxes already levied, are valid obligations, to the extent of the amount of the taxes so levied and collectible; and the issuance of such warrants does not increase the amount of the existing indebtedness of the county, within the meaning of the federal limitation. And, to render such warrants invalid, it must affirmatively appear that no taxes had been provided for their payment when the warrants were issued."

In the Hall Lithographing Company case it was held that said act was not a grant of power upon the county to incur indebtedness, but was a limitation thereon, and that a newly organized county in this Territory has the power to incur a valid indebtedness, and issue warrants as an evidence thereof, prior to the making of an assessment of the taxable property therein for the purposes of territorial and county taxation, to meet the ordinary and and necessary expenses of carrying on and conducting the functions of county government; and the incurring of such indebtedness is not in violation of section 4 of the act of congress of July 30, 1886, which prescribes, among other things, that no county shall ever become indebted in excess of four per centum of the value of the taxable property therein, to be ascertained by the last assessment for territorial and county taxes previous to the incurring of such indebtedness.

And hence the rule announced in these cases is clearly distinguishable from the case at bar.

It is therefore manifest that said act is an express and positive limitation upon the power of the county to incur an indebtedness in any manner and for any purpose in excess of the federal limit; and that there is no distinction between debts incurred by operation of law, such as the salary of a county officer, and those debts or obligations arising from the voluntary contracts of the county authorities. Hence, a warrant issued by a county in payment of the salary of a county clerk is within the prohibition of said act, and it is a complete defense to an action upon such a warrant that at the time the services were performed and the warrant issued as an

evidence thereof, that the indebtedness of the county was above the maximum limit fixed by the federal statute. It was therefore error for the court to sustain the plaintiff's demurrer to paragraphs 2 and 3 of the defendant's answer.

For the reasons herein stated the judgment of the district court is reversed, and the cause remanded with directions to the court below to overrule the demurrer to paragraphs 2 and 3, of the defendant's answer, and to proceed in conformity with this opinion.

All of the Justices concurring.