# HASKINS & SELLS v. OKLAHOMA CITY.

No. 1337.   Opinion Filed May 14, 1912.

Rehearing Denied August 20, 1912.

Publication Withheld until September Term, 1912.

(126 Pac. 204.)

1.  **MUNICIPAL CORPORATIONS—Contracts for Services—''Present Indebtedness.''**  Where a city, through its mayor and city council, enters into a contract with an accountant for the auditing of the city's books and the installation of a new auditing system at a stipulated price per diem, including hotel fare and traveling expenses, the work to begin at once and continue until completed, where there is no provision in the contract as to when or how the services are to be paid for, such contract should be construed as an entirety, the rate per diem being a mere means of estimating the entire debt; and the indebtedness incurred thereunder is a present indebtedness, chargeable against the city's funds for the year in which the contract is made.

2.  **STATUTES — Validity of Territorial Statutes — Indebtedness of Municipalities—Tax Levy.**  Section 478, Wilson's Rev. & Ann. St. 1903, which provides that it shall be unlawful for any city council to incur any indebtedness against any of the city's funds in excess of 80 per cent. of the tax levied for such fund for such year, is not repugnant to section 4 of the Act of Congress of July 30, 1886, c. 818, 24 St. at L. 171, which provides that none of the territories of the United States shall incur an indebtedness beyond four per cent. of the taxable property of such territory as shown by the previous year's assessment.

3.  **MUNICIPAL CORPORATIONS—Indebtedness—Limitation—Void Contract.**  Under section 478, Wilson's Rev. & Ann. St. 1903, it is unlawful for the mayor and city council of any city to enter into any contract, or incur any indebtedness against the city, or any of the funds of the city, in excess of 80 per cent. of the tax levied for such funds for the year in which the indebtedness is incurred; and any contract entered into, or any indebtedness incurred, in violation of said section is void as to the city, and does not create a debt against the city.

4.  **SAME—Void Contract for Services—Quantum Meruit.**  Where a contract for the services of an expert accountant, to be rendered to a city, was void as incurring an excessive indebtedness, in violation of Wilson's Rev. & Ann. St. 1903, sec. 478, the city was not liable on a quantum meruit for the reasonable value of the services rendered.

(Syllabus by 'Harrison, C.)

*Error from District Court, Oklahoma County;*
*George W. Clark, Judge.*

Action by Haskins & Sells against Oklahoma City to recover $13,211.28 for auditing the city's books and accounts. Judgment for defendant, and plaintiff brings error. Affirmed.

Plaintiff began this action February 14, 1905, to recover the sum of $13,211.28, alleged to be due plaintiff from defendant for services which consisted in auditing the city's books and accounts for a period of six years prior to June 12, 1903, and installing a new system of auditing the city's books and keeping the accounts.

Plaintiff is a corporation, organized under the laws of the state of New York, and engaged as expert accountant in auditing accounts and devising and installing systems of accounts for municipal and other corporations.

The petition alleges, in substance, that plaintiff, organized as such accountant and engaged in such business of auditing accounts, it entered into a contract with the city of Oklahoma City, through its mayor and city council, by which contract plaintiff was to audit the books and accounts of defendant, covering a period of six years prior thereto, and devise and install a new system of auditing; that the compensation agreed upon for such services was $25 per day for one expert accountant and $15 per day each for two assistant accountants, and that, in addition thereto, the traveling expenses and hotel bills incurred by plaintiff while engaged in said work should be paid by the city; that, pursuant to such contract, and in compliance with the terms thereof, plaintiff was engaged in the services of auditing the books and accounts of the city, and installing such new system of accounts from the 12th day of June, 1903, to about the 1st day of September, 1904; that an itemized account of such services, together with an itemized account of hotel bills and traveling expenses, had been presented to the mayor and city council of said defendant city; and that payment thereof had been refused; wherefore plaintiff asked judgment for the sum above stated.

Plaintiff subsequently amended its petition by alleging, as an additional cause of action, that the amount aforesaid was due it upon an implied contract for services rendered the city at the special instance and request of the city, through its mayor and city council, and that such services were rendered as set forth in the itemized accounts, and that same were reasonably worth the sum therein claimed, and that defendant had accepted such services and ratified such implied contract, and received the benefits thereof, from which a liability on *quantum meruit* had arisen.

The defendant answered, denying all the material allegations not specifically admitted, and set up the affirmative defense that plaintiff had not complied with the laws of the territory relating to foreign corporations, and alleging that if defendant city, through its mayor and city council, had entered into a contract with plaintiff for the auditing of the books of the city, or for installing a new system of bookkeeping in the city, or for the work alleged to have been done by plaintiff, whether said contract be express or implied, that it was illegal and void, for the reason that at the time said contract was alleged to have been made and entered into between plaintiff and defendant more than 80 per cent of the taxes levied for the city's expenses during the current year from June 30, 1902, to June 30, 1903, for the city's contingent and supply fund for said fiscal year, had been paid out of said funds, and that there was no cash in said funds available for said purpose, and that the contingent and supply fund was the only fund provided by law which such class of indebtedness could be contracted against and paid out of, and that said contract, if so made by the city, was in excess of the 80 per cent. limit fixed by law, and was void.

Plaintiff replied thereto, denying all allegations of new matter, and alleging, further, that defendant was estopped from denying the validity of said contract, for the reason that it had acquiesced in and ratified same, and accepted the services of plaintiff thereunder.

Upon these issues the case was tried at the January term, 1909. During the trial the court sustained a demurrer to the

plea of estoppel, to which plaintiff excepted. At the close of plaintiff's testimony, defendant interposed a demurrer, which was sustained by the court in the following language, to wit:

"Gentlemen of the jury, at the close of the plaintiff's evidence in this case, the defendant has interposed a demurrer to the evidence, which raises the question as to the sufficiency of the evidence to permit a verdict to be rendered in favor of the plaintiff upon that evidence, if none were offered by the defendant. The court has been asked to pass upon that question, and it is its duty to pass upon it at this stage of the proceedings, when requested. The court is of the opinion that under the law of Oklahoma the mayor and city council, under the condition of its treasury at that time, its salary fund, and the contingent and supply fund, both of·which were largely overdrawn, and there were no available funds under a levy which had been made, and the cash that was then on hand, from which the contract liability ·which was then undertaken could be met, that the city council had no authority in law to make the contract which is sued on in this case; and therefore the court sustained the demurrer to the evidence and now withdraws the entire case from your consideration. The demurrer of the defendant is sustained, and you may be excused from further consideration of this case."

Thereupon the court rendered judgment in favor of defendant and dismissed said action at plaintiff's cost. Motion for a new trial was presented and overruled, and plaintiff brings the case here for review upon eight assignments of error.

*Cleveland F. Bacon, C. W. Stringer,* and *E. L. Fulton,* for plaintiff in error.

*Col. J. W. Johnson* and *Geo. A. Matlack,* Municipal Counselors, for defendant in error.

Opinion by HARRISON, C. (after stating the facts as above). Plaintiff in error, in its brief, contends for each assignment, but bases its argument upon two propositions, in doing which it covers and discusses all the errors assigned. The two propositions thus argued and relied upon are as follows:

"First. A contract which, at the time it is entered into, creates no indebtedness, but is such as may, at some future period, create an indebtedness, provided the contracting party performs

the agreement out of which the debt may arise, does not come within the inhibition of section 478, Wilson's Statute 1903.

"Second. Section 478, Wilson's Statutes of Oklahoma 1903, is void, for the reason it is in conflict with section 4 of the Act of Congress of July 30, 1886, c. 818, 24 St. at L. 171."

Plaintiff in error, however, in its reply brief, presents what to us seems to be the decisive question involved, namely, whether such contract was in violation of section 478, Wilson's Rev. & Ann. St. 1903, and void.

Briefly recapitulating, we have three propositions for determination: First, did the city in this contract incur an indebtedness against the city's funds for the year 1903? Second, is section 478 of Wilson's Rev. & Ann. St. 1903, in violation of section 4 of the Act of Congress of July 30, 1886? Third, was the contract in violation of said section 478 of Wilson's Rev. & Ann. St. 1903, and void?

On the first question, counsel for plaintiff in error, in support of the contention that the contract was not such as in its nature and terms created an indebtedness against the city until after the services were rendered, cite an exhaustive list of authorities, including *Territory of Okla. v. Oklahoma City,* 2 Okla. 158, 37 Pac. 1094; *Giles v. Dennison,* 15 Okla. 55, 78 Pac. 174.

We have examined the entire list of authorities, and find that, with the exception of *Weston v. Syracuse,* 17 N. Y. 110, and *Dively v. Cedar Falls,* 27 Iowa 227, none are applicable to the condition of facts involved in the contract before us. In *Territory of Okla. v. Oklahoma City, the* question decided was that "a contract entered into by a city, whereby such city contracts to pay the sum of $4,400 per annum for a term of twenty years, as rental for water hydrants, does not create a present indebtedness against said city in a sum equal to the aggregate amount of such rentals for the entire period of time for which the contract is to run."

In *Giles v. Dennison* the question decided is, that "a contract providing for the construction of a courthouse and jail, and the payment of an annual rental under the provisions of section 2 of article 8 of chapter 32 of the Laws of 1897, and at the end of which time the title to be vested in the county, does not create

a present indebtedness against the county in a sum equal to the aggregate amount of such rentals for the entire period of time for which the contract is to run."

It is readily seen that these decisions are not applicable in the case at bar; nor are the questions therein decided decisive of the questions involved in the nature and terms of this contract. In nearly all the decisions cited by plaintiff in error, the questions decided were similar to those decided in the Oklahoma cases, *supra;* that is, the question before the court in comparatively all of the cases cited was where cities, or municipalities, had contracted for some public service for a term of years at so much per year—the courts holding that such contracts did not incur a present indebtedness for the entire time. But in the cases of *Weston v. Syracuse* and *Dively v. Cedar Falls* it is held that "an obligation to pay for work to be performed in the future, and paid for when performed, does not become an indebtedness until the performance of the work."

In the case of *Weston v. Syracuse,* the contract in question was a written contract, by which plaintiff undertook to grade and pave a portion of a certain street in the city of Syracuse, the plaintiff contending that the services were performed, or part of same performed, when defendant forbade the completion of same and refused payment for the services rendered, because the contract was in excess of the city's power to make contracts for that year (1855); but the record showed, and the court so found, that the contract, though entered into in July, 1855, specifically provided that the work was to be done in 1856, and that payments therefor should be made as the work progressed. The court therefore held that the contract was not in excess of the city's power to incur indebtedness for the year 1855, for the reason that the city was not liable on such contract out of the funds levied for the year 1855.

In *Dively v. Cedar Falls,* the contract was to build a bridge across Cedar river. The defense against payment for such bridge was that the city had incurred an indebtedness beyond the constitutional limit. It does not appear in the opinion, Jus-

tice Wright rendering same, what the terms of the contract were; but the court illustrates it in this language:

"If A should undertake to build a courthouse within three years, doing so much, and to be paid accordingly, each year, the obligation of the contract would arise when executed; but the *indebtedness,* under the Constitution (if there was none other), would be measured by that to be paid each year."

We presume the contract in question was illustrated by the court's language. Plaintiff recovered in the lower court, which recovery was affirmed by the Supreme Court, upon the theory that the entire indebtedness incurred under the terms of the contract was not chargeable against the funds of the city for the year in which the contract was made.

But neither of these cases decide the question involved in the case at bar; the contracts therein being wholly different in terms and conditions to the one involved herein.

In *Burlington Water Co. v. Woodward,* 49 Iowa 58, a somewhat similar question was before the court. The city had passed an ordinance authorizing the construction of waterworks within the city upon certain conditions prescribed, and providing that the city should have the right, whenever its financial condition permitted, to purchase such waterworks system. The question before the court was whether, by such ordinance, the city had violated a constitutional provision, as follows:

"No county, or other political or municipal corporation, shall be allowed to become indebted in any manner, or for any purpose, to an amount in the aggregate exceeding five per centum of the value of the taxable property within such county or corporation, to be ascertained by the last state and county tax list previous to incurring such indebtedness."

The court, in determining whether a *present* indebtedness was created by such ordinance, submits the following test as to whether a contract or ordinance creates a *present* indebtedness or one *in futuro.* Justice Seevers, rendering the opinion, says:

"The material and only question, therefore, is whether an indebtedness was thereby created within the constitutional inhibition. It is believed the Constitution applies, not only to a present indebtedness, but also to such as is payable on a contingency at some future day, or which depends on some contingency before

a liability is created. But it must appear such contingency is sure to take place, irrespective of any action taken or option exercised by the city in the future; that is, if a present indebtedness is incurred or obligation assumed which, without further action on the part of the city, would have the effect to create an indebtedness at some future day, such are within the inhibition of the Constitution. But if the fact of the indebtedness depends upon some act of the city, or upon its volition, to be exercised or determined at some future day, then no present indebtedness is incurred, and none will be until the period arrives and the required act or option is exercised; and from that time only can it be said there exists an indebtedness."

This, it seems to us, is a clear and accurate test as to whether, by the terms of a contract, a *present* or *future* indebtedness is incurred.

In the contract herein, there is no contingency as to the city's liability. It is not conditioned that the services were to be rendered during the incoming fiscal year, and that such services should be paid for out of the ensuing year. The city reserved no option as to when or how they should be paid, but in the latter part of the fiscal year ending June 30, 1903, entered into an agreement with plaintiff, whereby plaintiff was to audit the city's books and accounts and install a new auditing system for $25 per day for one expert accountant, and $15 per day each for two assistants, including the hotel bills and traveling expenses of the entire force.

The agreement was reached and plaintiff began work June 12, 1903. Nothing was said or intimated in the agreement, nor in the conversations or correspondence leading up to it, which reasonably justifies any other inference than that the contract was an entirety, the rate per diem being merely a means of measure for determining the aggregate indebtedenss; and that such indebtedness was incurred on and dated from June 12, 1903. The record discloses that in the conversations between plaintiff's agent, Mr. Hubbell, and the city council, in reference to the approximate cost of the work, that it was thought about $1,800 or $2,000 would cover the cost. In answer to questions propounded by members of the city council, Mr. Hubbell stated that he could not tell exactly how long it would take to do the work, probably

ten days, probably 30 days, and possibly six months or a year, owing to the condition of the books and accounts. But the whole conversation leading up to the final agreement shows that $1,800 or per day for hotel bill, reckoning therewith the bills filed for traveof the fiscal year ending June 30, 1903. And if this work had been completed by June 30th, and the money to pay for same had been on hand in the proper funds, we cannot believe but that plaintiff would have demanded its pay; nor do we hold, under such circumstances, considering the terms of the agreement, the funds on hand not being necessary to meet previous outstanding indebtedness, that the city could have escaped liability out of that year's funds. Hence we must construe the contract as an entirety, and hold that the amount due thereon was incurred at the time it was entered into. The subsequent acts of the parties clearly show this to have been the construction which they placed on it; the city council making no provision for payment out of the funds of the ensuing year, and the plaintiff filing its bills and claiming the amount due thereon at the end of each month after the work began. See *Campbell et al. v. State ex rel.,* 23 Okla. 109, 99 Pac. 778, and *Garvin Co. v. Lindsey Bridge Co.,* 32 Okla. 784, 124 Pac. 324.

In the second proposition, plaintiff in error contends that section 478, Wilson's Rev. & Ann. St. 1903, is void, because in conflict with section 4 of the Act of Congress of July 30, 1886, c. 818, 24 St. at L. 171. Section 478 of Wilson's Rev. & Ann. St. 1903 provides that no city shall incur an indebtedness in excess of 80 per cent. of the tax levy for such year. Section 4 of the Act of Congress referred to provides that no municipal corporation, county, or other subdivision in any of the territories of the United States shall incur an indebtedness in excess of four per cent. of the taxable property for the year in which the indebtedness is incurred, the aggregate of such property to be ascertained from the tax lists of the previous year. In support of this contention counsel cite *Hoffman v. County Com'rs,* 3 Okla. 325, 41 Pac. 566; *County Com'rs v. Gillet,* 9 Okla. 593, 60 Pac. 277; *Allen v. Reed,* 10 Okla. 105, 60 Pac. 277; *Allen v. Reed,* 10 Okla. 105, 60 Pac. 782; *Davis v. Beason,* 133 U. S. 343,

10 Sup. Ct. 299, 33 L. Ed. 637. Neither of the cases above cited decides the question contended for by plaintiff in error; nor do they seek to decide such question. The question decided in these cases is that, "where Congress legislates directly upon any subject for the government of the people of the territory, then it ceases to be a rightful subject of territorial legislation, and any law enacted by the Legislature upon the same subject is void." This doctrine we heartily concur in, as it is too obviously plain to need a citation of authority. But does it follow that because Congress has said that no territory, or municipality, or subdivision thereof, shall contract an indebtedness beyond four per cent., saying nothing of a minimum limit, that a legislative act of such territory, fixing the limit of indebtedness at a per cent. less than that fixed by Congress, is in conflict with the congressional act? This question we must answer in the negative.

In *Kerr, County Clerk, v. State ex 'rel. Wimbish, County Atty.,* 33 Okla. 110, 124 Pac. 284, in an opinion by Justice Dunn, this court held that the Act of 1885, fixing the indebtedness which counties may incur at 80 per cent of the tax levy, is not repugnant to section 26, art. 10, of the Constitution (section 291, Williams' Ann. Const. Okla.), fixing the maximum limit at a higher rate. The question presented in the case, *supra,* was whether the limitation fixed by the Constitution was a grant of power which the Legislature could not prevent counties or subdivisions of the state from reaching, or whether it was merely a maximum limit within which the Legislature might fix a lower maximum, but could not prescribe a limit beyond or in excess of that fixed by the Constitution. The court held it to be a limitation upon the authority of the Legislature to allow counties or other subdivisions of the state to become indebted beyond the limit therein prescribed and not a limitation upon its authority to fix a limit within the maximum prescribed by the Constitution. This holding is in thorough accord with our views on the question presented here. We do not believe that Congress intended by this act to prevent the Legislature from fixing a limit of indebtedness lower than the maximum fixed by Congress. Congress merely

intended to say that the territory of Oklahoma and the subdivisions thereof may go thus far, but shall go no farther.

The third contention of plaintiff in error presents a question on which there is some apparent conflict of authorities. It is a question of great importance to our cities and other municipalities, and to the state at large. It is a question of peculiar, as well as serious, import. It may be asked from diametrically opposite standpoints, and presents a wholly different aspect according to the standpoint from which it is asked. From one standpoint it may be asked:

"Shall a city receive substantial benefits under a given contract, and then avoid payment for such benefits because the contract is void?"

From the other standpoint, it may be asked:

"Shall parties be indulged in making contracts with a city council in total disregard of the law plainly prohibiting such contracts, and then hold the city liable for the services rendered?"

The apparent conflict in authorities, above mentioned, is due in a partial degree to the standpoint from which it is viewed by the courts; but the major reason for such conflict is due to the difference in statute or constitutional provisions out of which the questions arose. Plaintiff in error views it from the former standpoint, and cites a long list of authorities in support of such views. We shall here review some of the stronger of those decisions, in order to show the distinction between the questions determined in those cases and the question presented to this court.

In *Marsh v. Fulton County*, 10 Wall. 676, 19 L. Ed. 1040, the suit was for recovery on bonds which had been issued to aid the construction of a railroad. The defense was that the bonds were illegal, because the proposition to vote same had not been submitted to a vote of the people, as required by law. The court, however, Justice Fields rendering the opinion, held that recovery could not be had upon the bonds, but held the city liable for the money paid for the bonds. This holding was based upon the proposition that the city had power, under the law, to issue the bonds in question, but that the bonds were irregularly issued by

.not having been submitted to a vote of the people. The language of this opinion relied on by plaintiff in error is as follows:

"We do not mean to intimate that liabilities may not be incurred by counties, independent of statutes. Undoubtedly they may be. The obligation to do justice rests upon all persons, natural or artificial; and if a county obtains the money or property of others without authority, the law, independent of statute, will compel restitution or compensation."

This language, standing alone, as an abstract proposition of law, might support plaintiff's contention, but a close study of the case discloses that the court was discussing whether the county should be held liable for the money received on the bonds, although the bonds had been irregularly issued; the court evidently holding the county liable on the ground that the county could have issued such bonds, had power to issue such bonds, regularly by submitting the proposition to a vote of the people, and that it should not escape liability because of this mere irregularity.

In *Hitchcock v. Galveston*, 96 U. S. 341, 24 L. Ed. 659, the city had contracted for the construction of sidewalks, and issued bonds in payment for same. The bonds were irregularly issued, and the court held that recovery could not be had on them, but held that the city could be made liable for the sidewalks built under the contract. This holding, however, was based upon the theory that the city had power, under the law, to contract for the building of the sidewalks, and, not being prohibited by law from contracting for sidewalks, it should not escape liability for same, merely because the bonds in payment of same had been irregularly issued.

In *Louisiana v. Wood*, 102 U. S. 294, 26 L. Ed. 153, suit was brought to recover money which had been paid for bonds irregularly issued. The court held that the bonds were void, recovery should not be had on them, but that the money paid for them might be recovered back. In this case it is conceded that the bonds would have been valid, had they been properly executed. There is no contention that the city was prohibited by law from entering into a contract in an amount equal to such bonds.

In *Maher v. City of Chicago,* 38 Ill. 266, the suit was for services rendered in deepening and widening the Chicago river. In that case there was a specific agreement that the services were to be paid out of a fund to be raised by special assessment. There is no contention that the city had no power to make such special assessment, or was prohibited by law from entering into such contract; the defense in that case being that the levy, which the city had power to make, had not been made.

In *Village of Harvey v. Wilson,* 78 Ill. App. 544, the suit was for legal services rendered by an attorney in defending the city's interest in a certain suit. The attorney had been employed by the mayor. The defense made in such suit was that no appropriation had been made to pay such attorney, and that such contract was in violation of statute providing that no contract should be made, unless an appropriation had previously been made to meet the expense thereby incurred. Inasmuch as the city had power to make such appropriation, or, rather, inasmuch as there was no restriction on the city's power to make such appropriation, and then enter into such contract, the court held the city liable for the services, notwithstanding it had failed to make the appropriation.

We find no objection to the rule announced in the foregoing decisions. The same rule, supported by a long list of authorities, is announced in section 2175, Gray's Limitations of Taxing Powers, as follows:

"Where the municipality has *lawful power to borrow the money or incur the debt,* but, through irregularity in the manner of incurrence, or in the form of the debt, or some defect in the proceedings which does not go to the essential question of *debt-contracting power,* the bonds or contracts or evidence of debt are void. The *debt* remains in existence and the municipality may be compelled to return what it has actually received." (Italics ours.)

But it must be observed that this rule is not applicable to the questions presented here, for the reason that in none of the cases cited does the validity of the debts go to the "debt-contracting power" of the boards or bodies which incurred them. On this

question the same authority in section 2174, after stating the rule, says:

"The cases cited support the rule stated that a debt which is in excess of the constitutional limit is void; and in no form can such debt be held valid upon any theory of *quantum meruit* or equitable obligation. The absolute lack of power to contract the *indebtedness bars every form of action* and every legal device by which recovery is sought" (italics ours)

—citing *Litchfield v. Ballou,* 114 U. S. 190, 5 Sup. Ct. 820, 29 L. Ed. 132; *Hedges v. Dickson County,* 150 U. S. 182, 14 Sup. Ct. 71, 37 L. Ed. 1044; *Morton v. City of Nevada* (C. C.) 41 Fed. 582; *Brazoria County v. Youngstown Bridge Co.,* 80 Fed. 10, 25 C. C. A. 306; *City Water Supply Co. v. City of Ottumwa* (C. C.) 120 Fed. 309; *Swackhamer v. Hackettstown,* 37 N. J. Law 191; *McGillivray v. Joint School District,* 112 Wis. 354, 88 N. W. 310, 58 L. R. A. 100, 88 Am. St. Rep. 969.

Art. 8, c. 12, Wilson's Rev. & Ann. St. 1903 (article 7, c. 14, Comp. Laws 1909), which was an Act of the Legislature, approved March 12, 1897, provides: That on the second Monday of July of each year, the mayor and city council of cities of the first class shall make a tax levy, not to exceed the limit therein provided for each fund, for the following funds: Street and bridge fund, fire and water fund, contingent and supply fund, street-lighting fund, salary fund, sinking fund, park fund, and judgment fund. That such levy is to be made upon an estimate of the probable expenses against each fund for the ensuing year; and that 25 per cent. may be added to such estimate as an allowance for delinquent taxes. It further provides that the taxes so levied, when collected, shall be kept in the special funds created in such act for which such taxes were levied; and that such money shall not be diverted from any fund to the payment of the indebtedness against other funds. It further provides what expenses may be made a proper charge against each fund, and provides a penalty for diverting the money of any one fund to the payment of claims against any other fund, and provides that any member of any city council voting to divert any of such funds from the puprose for which such funds were collected, or to allow any bill against any fund not properly charge-

able therewith, shall be deemed guilty of a misdemeanor, and punishable by a fine not exceeding $500 or imprisonment not exceeding six months, or both. Section 478 provides:

"It shall be unlawful for any city council to issue any certificate of indebtedness in any form, in payment of or representing or acknowledging any account, claim or indebtedness against the city, or to make any contracts for, or incur any indebtedness against, the city, in excess of eighty per cent. of the tax levied for city expenses during the current year; nor shall any expenditures be made, or indebtedness be contracted to be paid out of any of the funds of said city, in excess of eighty per cent. of the amount levied for said fund. If any such certificate of indebtedness be issued, or any indebtedness be incurred or contracted in excess of eighty per cent. of the tax levied for that purpose for that year, such certificate, contract, or debt shall not be a charge against the city, but may be collected from any or all the members of the city council, or mayor, voting to allow such claim or make said contract, unless the cash is in the treasury for the payment of such obligation, and any warrant drawn against any fund in excess of eighty per cent. of the amount levied for such fund, for the current year, when the cash is not in the treasury for the payment of the same, shall not be a charge against the city, but may be collected from the mayor and council, or either of them, voting for or approving said bill."

This is a clear and strict limitation on the "debt-contracting power" of the city council. To construe it otherwise would be to nullify the law and thwart the object sought by the lawmakers.

A similar statute was enacted in 1895 (Laws 1895, c. 7) for the protection of counties, and as a limitation upon the powers of boards of county commissioners in levying taxes and incurring indebtedness. In *Huddleston v. Board of County Com'rs of Noble County*, 8 Okla. 614, 58 Pac. 749, and in *Shannon v. State ex rel. Davidson*, 33 Okla. 293, 125 Pac. 1106, and *Kerr, County Clerk, v. State ex rel. Wimbish, Co. Atty.*, 33 Okla. 110, 124 Pac. 284, the statutes relating to powers of county commissioners have been construed by this court, and the provisions therein held to be valid and binding. These statutes were enacted to meet a dire necessity for protection against an annually increasing

indebtedness and overburdensome taxation to meet same. Their purpose is yet fresh in the mind of the writer, as well as being clearly apparent from the language therein used. The language is full, clear, and specific; the purpose is manifest. As was well said by the trial court, "I don't know how it could be stated any clearer." This statute plainly says and means that the limit therein prescribed shall not be exceeded, and, if exceeded, the party guilty thereof shall be held personally liable for the amount of the indebtedness thus incurred, and, in addition thereto, shall be subject to a criminal prosecution. Hence this cause comes here upon a plain proposition of law—upon a plain provision of statute. A statute designed and enacted to guard against contracts in excess of the prescribed limits.

The court below heard and determined from all the evidence that the limit of indebtedness had been exceeded before this contract was made. The record supports the court's finding in this regard, and there is nothing left for this court to do, except to either uphold or set at naught a plain, valid, and wholesome provision of law. It is not a question of repudiation, as intimated by counsel for plaintiff in error. That question is not involved. It is a plain, legal question whether the contract was valid or void. If valid, then the city should be held liable. If void, then the same law which declares it void provides an adequate remedy against the mayor and city council for the value of the services rendered. The city is not repudiating a valid debt against it. It is simply asking relief from liability on a debt which the law fixes upon other parties. Nor is the question affected on the theory that plaintiff was ignorant of the provisions of law, and that it entered into this contract in good faith, believing the mayor and city council had authority, under the law, to make such a contract. Mr. Hubbell, who made the contract with the mayor and city council, and who had charge of the work in question, testified that he was not only an expert accountant, but was versed in municipal law; that the first thing he did upon assuming the work in question "was to read the law regarding the rights and powers of the municipality, posting myself upon their duties." "The next thing I did was to

take up and determine just how far those laws had been complied with."

"Now, the general doctrine is that parties entering into contracts with and dealing with municipalities are charged with notice of the law governing the power of such municipalities to make such contracts.

"The rule is general that persons contracting with a municipal corporation must, at their peril, inform themselves of the charter limitation of the city's power to contract, and the mandatory provisions of the method or manner of contracting. So a person entering into a contract with a municipal council is bound to take notice of the powers of the council in the premises as conferred by the charter, and to inform himself whether the requisite preliminaries have been performed." (20 Am. & Eng. [2d Ed.] 1183).

Hence, in view of the record, and in view of the unmistakable language of the statute and the general rule of law, we must hold this contract to be in violation of law, and void, and that the city is not liable thereunder.

In so doing we have not overlooked the argument of counsel for plaintiff in error on the question of public policy; but it is our opinion that a municipality can adopt no policy more wholesome to its integrity, or more helpful or enduring to its credit, than the policy of complying with the law.

The judgment should be affirmed.

By the Court: It is so ordered.