2007 OK CIV APP 74

**FLEMING AND GANDALL, PLLC,**
**Certified Public Accountants,**
**Plaintiff/Appellee,**

v.

**TOWN OF CASHION, Oklahoma,**
**Defendant/Appellant.**

**No. 103,561.**

Court of Civil Appeals of Oklahoma,
Division No. 1.

Feb. 9, 2007.

Certiorari Denied April 24, 2007.

Ashley D. Williams, Norman, Oklahoma, for Plaintiff/Appellee.

David A. Davis, Oklahoma City, Oklahoma, for Defendant/Appellant.

KENNETH L. BUETTNER, Judge.

¶ 1 Fleming and Gandall, PLLC, Certified Public Accountants, Plaintiff/Appellee (Fleming), sued the Town of Cashion, Oklahoma, Defendant/Appellant, for breach of contract alleging Fleming agreed to prepare Town's financial statements for fiscal year 2003 in July 2004, but that when the report was furnished with an invoice to the Town Board in October 2004, it failed to pay the contract price, $11,305, reflecting hours of work at $95 per hour. Town responded and subsequently filed a Motion for Summary Judgment. It alleged that Art. 10 § 26 of the Oklahoma Constitution excused Town from paying the contract. It alleged that the contract and resulting debt violated § 26; that funds were never appropriated or encumbered; and that Town did not have funds on hand to pay the debt. Fleming countered in its motion for summary judgment, that, *inter alia*, there were sufficient funds for payment both on the date of contracting and on the payment due date. Consequently there was no debt. There being admissible evidence to support Fleming's argument, we affirm the grant of summary judgment in its favor.

¶ 2 The gravamen of the parties' arguments are competing constitutional positions. Town claims the protection of Art. 10 § 26, which states in part:

(a) Except as herein otherwise provided, no county, city, town, township, school district, or other political corporation, or subdivision of the state, shall be allowed to become indebted, in any manner, or for any purpose, to an amount exceeding, in any year, the income and revenue provided for such year, without the assent of three-

fifths of the voters thereof, voting at an election, to be held for that purpose, nor, in cases requiring such assent, shall any indebtedness be allowed to be incurred to an amount, including existing indebtedness, in the aggregate exceeding five percent (5%) of the valuation of the taxable property therein, to be ascertained from the last assessment for state and county purposes previous to the incurring of such indebtedness:....

¶3 Town does not deny its contract with Fleming to perform the financial service, but because it did not appropriate funds to pay for performance of the contract, Town claims it is prohibited by § 26 from paying a void contract. It relies on such cases as *O'Neil Engineering Co. v. Incorporated Town of Ryan*, 1912 OK 398, 32 Okla. 738, 124 P. 19, and *Flood v. Town of Shidler*, 1927 OK 359, 127 Okla. 148, 260 P. 52 ("The intention and plain purpose of section 26, art. 10, of the Constitution, is to require municipalities to carry on their corporate operations upon the cash or pay as you go plan. The revenues of each year must take care of the expenditures of such year; and any liability sought to be incurred by contract, express or implied, executed or executory in excess of such current revenue in hand, or legally levied, is void, unless it be authorized by a vote of the people, and within the limitations therein provided." Syllabus by the court, paragraph 2).

¶4 By way of evidence, Town submitted the affidavit of its Clerk/Treasurer who stated that Town did not appropriate any funds for the accounting/auditing services by Fleming and further stated that no agreement for Fleming's services was approved by Town nor were funds encumbered to pay Fleming. The Clerk/Treasurer further averred that no unappropriated or unencumbered funds existed to pay debts incurred during fiscal years 2002/2003, 2003/2004 and 2004/2005. The Clerk/Treasurer also stated that the indebtedness to Fleming was incurred between July and October 2004 and for that fiscal year no funds remained for payment of debts. Finally, the Clerk/Treasurer testified that the profit and loss statement attached to her affidavit for fiscal year 2004/2005 was true and correct. (It showed a total expense of negative $67,234.09 and a net income of $61,660.37.) Town's manager also filed an affidavit which stated facts in a similar vein.

¶5 Fleming filed a Counter Motion for Summary Judgment. In its statement of undisputed facts, Fleming states that a contract for its services existed with Town, citing Town's Brief in Support of Town's Motion for Summary Judgment. ("Funds were never appropriated nor encumbered by Cashion for any payment on the contract,....." "No funds were appropriated, encumbered, or available to pay the contractual debt to Fleming....".) It also states that an invoice for services was faxed to Town September 14, 2004 and presented for payment at the October 4, 2004 Board meeting. Exh. 2 of Fleming's Motion to Strike.

¶6 At paragraphs 6, 7, and 11, Fleming states:

6. On October 4, 2004, the Town of Cashion had $29,745.58 to pay for the contracted services. *See* Plaintiff's exhibit 11, The Combined General Ledger for the Town of Cashion for FY 2005. The available cash balances as of October 4, 2004, were as follows: General Fund checking $774.77, *Id.*, at 3; Emergency Services Checking $411.59, *Id.*, at 12; General Fund Savings at $11,177.19, *Id.* at 16; Cashion Economic Development Authority at $14,453.77 *Id.* at ——; and Police Department Grant $2,718, *Id.* at 17.

7. On October 4, 2004, the Cashion Public Works Authority had $10,785.47 available to pay for the contracted services. *See* Plaintiff's exhibit 12, The Cashion Public Works Authority General Ledger for FY 2005. The available fund balances as of October 4, 2004 were as follows: Oklahoma Public Finance Authority at $3500, *Id.* at 1; Utility Fund Savings at $7,285.47, *Id.* at 12.

11. As of June 30, 2005 Cashion had Net Income available to cover the contract between Fleming and Cashion. *See* Defendants Profit and Loss Statement attached to their Motion for Summary Judgment. Other Income/Expense, showing transfers into the General Fund, Streets and Alley Fund, and Emergency Services Fund from

the Utility fund for a Total Other Income amount of $128,894.96 for a Net Income for the year of $61,660.37.

¶ 7 As a matter of law, Fleming argued that Town had a constitutional mandate to have all money it collected by taxation or otherwise, to be accounted and audited.[1] It further stated that this constitutional mandate was not self-executing, but that two statutes exist which apply the mandate: 74 O.S.2001 212A and 11 O.S.2001 17–105. Title 74 provides that all governmental entities shall have an audit in compliance with generally accepted auditing standards and that the expense shall be borne by the governmental entity.[2] Title 11 applies specifically to municipalities.[3] It requires governing bodies of municipalities which have a certain minimum budget to have an annual audit by an auditor who is an independent licensed or a certified public accountant.

¶ 8 Town's bedrock reply was that no funds were appropriated. Therefore, no funds were available.

¶ 9 In their motions for summary judgment, the parties posed to the trial court competing constitutional provisions. The trial court, in granting summary judgment in favor of Fleming found that there was no material dispute with respect to the fact that Town hired Fleming to organize and prepare the financial statements for the year 2003 in July 2004 and that the work was completed in September 2004. Town did not object to the amount charged. Further, there was no dispute with respect to the fact that Fleming billed Town and Town has not paid the amount due. The trial court held as a matter of law that Article 10 § 26 of the Oklahoma Constitution does not render the agreement void and found it was authorized by 11 O.S. 17–105 and 74 O.S. 212A.

¶ 10 "Although a trial court in making a decision on whether summary judgment is appropriate considers factual matters, the ultimate decision turns on purely legal determinations, i.e. whether one party is entitled to judgment as a matter of law because there are no material disputed factual questions. Therefore, as the decision involves purely legal determinations, the appellate standard of review of a trial court's grant of summary judgment is *de novo.*" *Carmichael v. Beller,* 1996 OK 48, ¶ 2, 914 P.2d 1051, 1053. "The ruling on a motion for summary judgment must be rested on the record which is then before the court rather than on one that could have been assembled. Similarly, the reviewing court is always limited to the issues actually presented below, as reflected by the record." *Frey v. Independence Fire and Casualty Company,* 1985 OK 25, ¶ 6, 698 P.2d 17, 20. However, "[w]hen, as here, legal relief clearly is affordable upon alternative grounds, consideration of constitutional challenges is inappropriate in light of our self-erected 'prudential bar' of restraint. Constitutional questions should not be reached in advance of strict necessity." *Russell v. Board of County Commissioners, Carter County, State of Oklahoma,* 1997 OK 80, ¶ 32, 952 P.2d 492, 504.

¶ 11 In the case at bar, the question was fairly presented to the trial court, as well as to this court, whether a debt was incurred. The Oklahoma Supreme Court has "... rec-

---

1. Okla. Const. Art. 10, § 30: The Legislature shall require all money collected by taxation, or by fees, fines, and public charges of every kind, to be accounted for by a system of accounting that shall be uniform for each class of accounts, State and local, which shall be prescribed and audited by authority of the State.

2. 74 O.S.2001 212A: **Audits of government entities**

A. 1. All government entities, as defined by the Governmental Accounting Standards Board, shall have an audit in accordance with generally accepted auditing standards and Government Auditing Standards. Copies of any audit performed by a person other than the State Auditor shall be filed with the State Auditor and Inspector by that person. The expense of the audit shall be paid by the government entity .... (2005 amendment did not affect this part.)

3. 11 O.S.2001 17–105: **Annual audit of books and accounts**

The governing body of each municipality with an income of Twenty-five Thousand Dollars ($25,000.00) or more to its general fund during a fiscal year shall cause to be prepared, by an independent licensed public accountant or a certified public accountant, an annual financial audit to be conducted in accordance with the generally accepted auditing standards and the "Government Auditing Standards" as issued by the Comptroller General of the United States. .... (The 2005 amendments to this statute do not affect this part.)

ognized that: 1) a debt is a promise to pay a certain amount, with interest, within a fixed time, out of taxes taken from all of the people, including those not benefitted; and 2) a city creates an indebtedness when it borrows money to be paid, with interest, from taxes in the future, whether such taxes are formally levied at one time, covering that future, or yearly, to meet the payments when about to mature." *Southern Corrections Systems, Inc. v. Union City Public Schools,* 2002 OK 93, ¶ 22, 64 P.3d 1083, 1090.[4] Not every contract entered into by a municipality qualifies as a § 26 debt. Contracting with Fleming, especially when the funds are shown to be available to pay for the services rendered, does not qualify as a § 26 debt. Therefore, we need not balance Oklahoma Constitution Art. 10 § 26 with § 30.

¶ 12 We hold there was no debt and that summary judgment was properly granted in favor of Plaintiff/Appellee Fleming and Gandall, PLLC.

AFFIRMED.

HANSEN, P.J., and BELL, J., concur.

---

4. Town also relied on *Haskins & Sells v. Oklahoma City,* 1912 OK 362, 36 Okla. 57, 126 P. 204, which also dealt with accounting services. The Court held the contract was void because it exceeded an 80% limit found in Section 478. Wilson's Rev. & Ann. St. 1903. We find this quote instructive: "And if this work had been completed by June 30th, and the money to pay for the same had been on hand in the proper funds, we cannot believe but that plaintiff would have demanded its pay; nor do we hold, under such circumstances, considering the terms of the agreement, the funds on hand not being necessary to meet previous outstanding indebtedness, that the city could have escaped liability out of that year's funds. Hence we must construe the contract as an entirety and hold that the amount due thereon was incurred at the time it was entered into." *Id.* at ¶ 5, pp. 207–208.