G. W. Giles, M. T. J. Capshaw, H. G. Cook, R. C. Berry, J. H. Hall and G. M. Roundtree, v. J. F. Dennison, W. D. Maxey and Fred W. James, *constituting the* Board of County Commissioners of Cleveland County, Oklahoma.

(Filed September 3, 1904.)

1. COUNTIES—Construction of Court Houses and Jails. Section 2, of article 8, chapter 32, Laws of Oklahoma, 1897, relative to the construction of court houses and jails, is not repealed by chapter 11, Laws of 1903. The Laws of 1893, and article 8 of chapter 32, and article 1 of chapter 12, of the Laws of 1897, and chapter 11 of the Laws of 1903, each provide additional plans to raise revenue for, and the construction of county buildings; neither was intended to take the place of the other.

2. SAME—Present Indebtedness. A contract providing for the construction of a court house and jail, and the payment of an annual rental, under the provisions of section 2, of article 8, of chapter 32, of the Laws of 1897, and at the end of which time the title to be vested in the county, does not create a present indebtedness

against the county in a sum equal to the aggregate amount of such rentals for the entire period of time for which the contract is to run.

(Syllabus by the Court.)

*Error from the District Court of Cleveland County; before C. F. Irwin, Trial Judge.*

*A. W. Fisher,* for plaintiffs in error.

*B. F. Wolf, County Attorney C. L. Botsford, James M. Gresham* and *Mosier & Dudley,* for defendants in error.

Opinion of the court by

BEAUCHAMP, J.: This is an action brought by the plaintiffs in error, in the district court of Cleveland county, as citizens and taxpayers of that county, to perpetually enjoin the defendants in error, as the board of county commissioners, from proceeding further in contracting for the construction of a court house and jail, and from creating a debt, expending money or making a tax levy therefor under the notice and advertisement for bids which had been published by order of the board, and reads:

"Notice to Architects and Contractors.—The board of county commissioners of Cleveland county, Oklahoma Territory, will meet in Norman, O. T., April 15, 1904, in regular session, and at said meeting, at the hour of 9 o'clock, A. M. of said day, will consider bids and propositions from any person or persons desiring to build a court house and jail for Cleveland County, O. T. on the rental plan under the provisions of the Laws of Oklahoma, 1897, section 2, article 8, chapter 32, as follows: 'The court funds shall be used, only, for the payment of witnesses, jurors, stenographers, bailiffs, janitors for the district court room, and the fees of the justices of the peace, probate judges, constables and

clerks of the district court, and in addition in counties which have heretofore or may hereafter construct court houses or jails to be paid for by an annual rental, such rental shall be a proper charge against the court fund, and an additional levy, not exceeding 3 mills may be levied for that purpose.'

"Said building to be paid for in semi-annual installments as rent.

"Bids must be filed in the office of said county clerk not later than 6 o'clock P. M. April 14, 1904.

"Said court house to contain district court room, judge's chambers, district clerk's office, two rooms and vault, three jury rooms, probate court room, probate clerk's office and vault, county treasurer's office, two rooms and vault, sheriff's office, school superintendent's office and vault.

"Said jail to be large enough to accomodate twenty prisoners, and jailor's office. Both buildings to be fitted with steam heating, plumbing, sewers and lighting. Both of said buildings to be constructed of stone or brick of best material, at a cost not to exceed $35,000.00. All bids to be sealed and accompanied with plans and specifications in detail. All bidders must accompany their bids and propositions with certified check for 20 per cent of the amount bid, and come prepared to show said board their financial ability to carry out their contract. Such buildings to be ample for the purposes designed, and suitable in every way. The rental contract to be for a term of ten years. Buildings to be erected on grounds belonging to the county, and at the expiration of the rental period to become the property of said county without additional payment. The board reserves the right to reject any or all bids, propositions, plans and specifications.

"J. F. Dennison, Chairman."
"Attest."
"F. O. Miller, County Clerk."

Application was made to the judge of the district court in vacation for a temporary injunction, and upon the hearing thereof, evidence was heard in support of the allegations of plaintiff's petition, and a temporary injunction was denied, to reverse which order denying the temporary injunction, the case is brought here by petition in error.

From the notice quoted, which is made a part of plaintiff's petition in error, it will be seen that the defendant board of county commissioners of Cleveland county proposed to receive and consider bids and propositions from any person or persons desiring to build a court house and jail for Cleveland county under the provisions of section 2, article 8, chapter 32, Laws of 1897.

There are only two questions raised and argued by plaintiffs in error:

First:   Has the statute under which defendants are attempting to proceed been repealed?

Second:   Will such a contract be in violation of the statutes of the United States?

In support of the first proposition, counsel for plaintiffs in error argues that section 2, of article 8, chapter 32, of the Laws of 1897, page 256, which is the section quoted in the notice by the board for bids hereinbefore copied, and therefore unnecessary to further quote here, is repealed in express terms by chapter 11, Laws of 1903, page 146, which reads:

"Sec. 1.   The boards of county commissioners are hereby authorized to provide for the construction or repairing of court houses, jails or other necessary buildings, and make contracts on behalf of the county for building or repairing the same, and for the purpose of providing a fund for the payment of the cost of the same, such boards of county commissioners are hereby authorized and empowered to levy a

tax not exceeding ten (10) mills in any one year and to con-
tinue such levies from year to year for a period not exceeding
five years; provided, that such levy for such purpose together
with the levies for all other purposes shall not exceed the
amount now authorized by law, and provided further, that
the money, raised by such levy or levies, shall constitute a
separate and distinct fund from all others in the hands of
the county treasurer until the obligation assumed by the
board of county commissioners under authority of this act
shall have been discharged; and any unexpended balance
which may remain in the county treasury after all claims
against such fund shall have been paid, and the purposes for
which it was created have been fully observed, may be trans-
ferred to other funds of the county by the county commission-
ers.   And provided further, that no levy or levies of taxes
for the purpose of this act shall be made by the board of
county commissioners of any county until after a majority
of the legally qualified voters of said county, voting upon
said proposition, shall have voted in favor of the expend-
itures whose payment is to be provided for by said levy or
levies of taxes, at a general election at which said proposition
shall be submitted, or at a special election called for the
purpose of voting upon said proposition.   The proposition
submitted at such general or special election, shall be whether
or not the board of county commissioners shall be authorized
to expend the sum desired (stating such sum) for the build-
ing of a court house, jail or other necessary building, and
shall be arranged on the ballot in suitable and convenient
form for voting.   Such special election shall be held as near-
ly as possible in conformity to the general election laws of
the Territory; and at any such general or special election
the votes upon the propositions submitted shall be counted
and canvassed, the returns thereof made, and the results
declared as nearly in conformity to the general election laws
of the Territory as possible: Provided, that notice of the
submitting of such proposition to the voters of the county

shall be given by the county clerk by publication in at least two newspapers published in said county and having a general circulation therein, for not less than thirty days immediately prior to said election; and provided further that if there is only one paper published in such county, publication in that paper for the required time shall be sufficient; and if no paper be published therein, notice of such election shall be given by posting up written or printed notices thereof for the required time, at least one in each voting precinct of such county at the most public places in said precinct.

"Sec. 2. All acts and parts of acts in conflict with the provisions of this act are hereby repealed."

To arrive at a fair understanding of the questions presented, it will be necessary to examine the numerous provisions of the statutes bearing upon the question as to the rental and construction and erection of court houses and jails. Section 1798, Statutes of 1893, provides that:

"In any county where there is no court house or jail erected by the county, or where those erected have not sufficient capacity, it shall be the duty of the board of county commissioners to provide for court room, jail and offices for the following named officers: Sheriff, treasurer, register of deeds, county clerk, county attorney, superintendent of public schools and judge of probate, to be furnished by the county in a suitable building or buildings, for the lowest rent to be obtained, at the county seat, or to secure and occupy suitable rooms at a free rent within the limits of the county seat or any of the additions thereto, until such county builds a court house. They shall also provide the courts appointed to be held therein, with attendants, fuel, light and stationery, suitable and sufficient for the transaction of their business. If the commissioners neglect, the court may order the sheriff to do so, and the expenses incurred by him in carrying the order into effect when certified by the court, shall be a county charge."

Section 1800 provides: "Said board shall have authority and power under the provisions of this act, to provide for the erection and repairing of court houses, jails and other necessary buildings within and for the county, and to make contracts on behalf of the county for the building or repairing of the same, but no expenditures for thee purposes herein named, greater than can be paid out of the annual revenue of the county for the current year, shall be made, unless the question of such expenditure shall have first been submitted to a vote of the qualified voters of such county, and shall have been approved by a majority of the votes so cast, and the board shall determine the amount and rate of taxes to be submitted to a vote for such purpose."

As will be seen by section 1798, in counties of this Territory where there is no court house or jail erected by the county, or where those erected have not sufficient capacity, it is the duty of the board of county commissioners to provide for a court room and jail, and offices for the officers named, for the lowest rent and upon the best terms obtainable, while section 1800 authorizes and empowers the board to provide for the erection and repairing of court houses and jails and other necessary buildings, and to make contracts on behalf of the county for the building and repairing of the same; and that no expenditure for that purpose greater than can be paid out of the annual revenue of the county for the current year, shall be made unless the question of such expenditure shall first have been submitted to the vote of the qualified voters of the county, and shall have been approved by a majority of the votes cast; while by section 2, of article 8, chapter 32 of the Laws of 1897, authority is given to construct court houses and jails to be paid for by annual rental, and to make such rental a proper charge against the court

fund, and authorizing a levy not exceeding three mills for that purpose.

Court houses and jails are necessary and indispensable, and by section 1798, *supra,* it is made the duty of the board of county commissioners of the various counties to provide for these necessary conveniences, and by section 1800, *supra,* they have the power to construct and erect court houses and jails, where the expenditure exceeds the sum that can be paid out of the annual revenue of the county for the current year, only by a vote of the people, but where such expenditure does not exceed the sum that can be paid out of the annual revenue of the county for the current year, then they are authorized to provide for the construction and erection of such buildings without a vote. Now section 2 of the Laws of 1897 makes provision for an annual levy of three mills for that purpose. Therefore construing these provisions of the statutes together, the board of commissioners are author-ized to provide for the construction of court houses and jails to be paid for by an annual rental where the payments required do not exceed the sum that can be realized from a levy of three mills on the taxable property of the county, unless the statute of 1897 referred to is repealed by chapter 11 of the Laws of 1903. By the act of 1903, the act of 1897 is not repealed in express terms, as asserted by counsel for plaintiff in error. It is a well settled rule that repeals by implication are not favored, and when two statutes covering in whole or in part the same matter are not absolutely irreconcilable, effect should be given, if possible, to both of them. (*Carpenter v. Russell,* 13 Okla. 277, *United States v. Greathouse,* 166 U. S. 601.)

"It must appear that the latter provision is certainly and clearly in hostility to the former. If by any reasonable construction the two statutes can stand together, they must so stand. If harmony is impossible and only in that event, the former law is repealed in part or wholly, as the case may be. (*State v. Stahl,* 17 Wall. 430.)

"Repeals of statutes by implication are not favored, and are never admitted where the former can stand with the new act, but only where there is a positive and irreconcilable repugnancy, or the latter is plainly intended as a substitute for the former." (*Chen Heang, v. U. S.* 112 U. S. 536.)

"It is necessary to repeal by implication that the object of the two statutes must be the same; if they are not, both will stand, even though they refer to the same subject." (*U. S. v. Claffin,* 97 U. S. 546.)

"It is a general rule, without exception in construing statutes, that effect must be given all their provisions, if such a construction is consistent with the general purposes of the act, and the provisions are not necessarily conflicting. All acts of the legislature should be so construed, if practicable, that one section will not defeat or destroy another, but explain and support it." (*Bernier v. Bernier,* 147 U. S. 242; *Carpenter v. Russell,* 13 Okla. 277.)

Are the acts referred to absolutely irreconcilable? Is the act of 1893 certainly and clearly in hostility to the act of 1897. Is harmony impossible? As stated before, the act of 1897 simply provides for the construction of court houses and jails upon the annual rental plan, and that the necessary expenditure when not exceeding three mills to be levied upon taxable property of the county be made a charge upon the court fund, while the law of 1903 not only provides for the erection of court houses and jails, but for all other necessary buildings, and authorizes the board of county commissioners to levy a tax for that purpose not exceeding ten mills

in any one year, and to continue such levies from year to
year for a period not exceeding five years, provided a majori-
ty of the legally qualified voters of the county shall have
voted in favor of the expenditures; and providing further
that the money raised by such levy or levies shall constitute
a separate and distinct fund from all others in the hands of
the county treasurer, until the obligation assumed by the
board of county commissioners under authority of that act
shall have been discharged. It will be seen that the act of
1897 provides only for the construction of court houses and
jails, and makes no reference whatever to other buildings,
and does not create a separate fund, but makes the expendi-
tures necessarily a charge upon the court fund, to the same
extent as other charges are authorized upon this fund, and
limits the levy to a small rate of three mills, while the stat-
ute of 1903 not only authorizes the board to provide for the
construction and repairing of court houses and jails, but
other necessary buildings, and also provides for a greater levy
for that purpose and limiting the same to not exceeding
five years. It is to us clear that the two acts are in no way
repugnant, but merely provide different plans for the raising
of revenue for the construction of county buildings, and that
the act of 1903 was .not intended to take the place of the
other provisions of the statute then existing. For instance,
under the act of March 11, 1897, article 1, chap. 12, Laws
of 1897, page 111, will be found a provision authorizing the
board of county commissioners of any county in the territory,
when they consider it to be to the best interest of the county,
to purchase or· erect a court house or jail, to contract for
the purchase or erection of the same, and to issue bonds in
payment therefor, provided, however, that the bonds shall

not be issued until the question shall first have been submitted to the people of the county and a majority of the legally qualified voters, voting at any special or general election called by the board for that purpose, shall have declared in favor of issuing such bonds. Can it be successfully contended that this act providing for the issuance of bonds repealed section 1800 of the Statutes of 1903 above cited? If so, then the board of county commissioners could not construct court houses and jails, even though the necessary expenditure would not exceed the revenue of the county for the current year, for under the provisions of the act of March 11, 1897, sec. 1468, it can only be done by the issuance of bonds.

And again if the contention of plaintiffs in error is correct, then the boards of county commissioners of the counties of this territory have no authority to provide for the construction and repairing of court houses and jails except when the question is first submitted to a vote of the people, and that notwithstanding the expenditure necessary therefor will not exceed the amount that could be paid out of the annual revenue of the county for the current year, for the act of 1903 makes no exceptions, and contains no such provisions. If this act then is the only act in force in the Territory, no building can be erected and repaired for the county excepting the same be first authorized by a vote of the people of such county. The Laws of 1893, and article 8, of chap. 32 and art. 1 of chap. 12 of the Laws of 1897, and chap. 11 of the Laws of 1903, each provide additional plans to raise revenue and for the construction of county buildings, and neither was intended to take the place of the other.

The statute referred to in the second proposition of the plaintiffs in error, the act of congress of July 30, 1896, 24 Stat. at Large, sec. 4, page 171 reads, so far as applicable, as follows:

"That no political or municipal corporation, county or other subdivision in any of the Territories of the United States, shall ever become indebted in any manner or for any purpose to any amount in the aggregate, including existing indebtedness, exceeding four per centum of the value of the taxable property within such corporation, county or subdivision. to be ascertained by the last assessment for the Territorial and county taxes, previous to the incurring of such indebtedness; and all bonds and obligations in excess of such amount given by such corporation shall be void.  *   *   *"

The allegations of plaintiffs' petition are, and the evidence shows, that the valuation of Cleveland county, as shown by the last assessment for the territorial taxes, being the assessment of 1903, is $2,137,309; that the outstanding and bonded indebtedness is $76,500; that four per centum (4 per cent.) of the total assessed value is $85,480; and that the difference between the present bonded indebtedness and four per centum of the total assessed value is $8,980.   The evidence further shows that the county has funds on hand in the sum of $3,458, realized from insurance from the court house that burned.   Therefore if the proposed contract creates an indebtedness in any sum which would increase the indebtedness of the county above four per centum of the valuation, then such contract is in conflict with the federal statute quoted and is void.   The court fund is part of the current expenses of the county.   The three mills to be levied on account of the contract is a part of the court fund, and from the agreement the annual rental provided for simply

becomes a part of the current expenses, which are required to be paid from that fund.

In the case of *Johnson v. Board of County Commisioners of Pawnee County* 7 Okla. 687, it is held:

"* * * Notwithstanding the fact that the indebtedness of the county has reached the federal limit, warrants issued for meeting the current expenses of the county, and in anticipation of the collection of taxes already levied, are valid obligations to the extent of the amount of the taxes so levied and collectible; and the issuance of such warrants does not increase the amount of the existing indebtedness of the county, within the meaning of the federal limitation; and to render such warrants invalid, it must affirmatively appear that no taxes had been provided for their payment when the warrants were issued."

In the case of *Territory of Oklahoma ex rel J. H. Woods, County Attorney of Oklahoma County v. The City of Oklahoma et al.,* 2 Okla. 158, we quote from the syllabus:

"A contract entered into by a city whereby such city contracts to pay the sum of $4,400 per annum for a term of twenty years as rental for water hydrants, does not create a present indebtedness against said city in a sum equal to the aggregate amount of such rentals for the entire period of time for which the contract is to run."

In the case of the *City of South Bend et al. v. Reynolds,* supreme court of Indiana, 49 L. R. A. 795, we quote from the syllabus:

"A city does not become indebted beyond its constitutional limit by a contract under which a person is to erect upon its land a city hall, to be leased to the city at an agreed and fair rental for a term of years with the option to purchase the building, or,.if this is not exercised, with an option to the lessor to remove it or buy the land at its statutory appraised valuation, where it does not appear that the current

revenues of the city, will not be sufficient to pay the indebtedness for rent each year, together with all other expenses for which the city is liable."

In the opinion by Monks, J., it is said:

"It is settled in this state that if a city contracts for water, light or other things which pertain to its ordinary and necessary expenses, and agrees to pay for the same annually or monthly as furnished, such contract does not create an indebtedness for the aggregate sum of all the annual or monthly payments, because the debt for each year or month does not come into existence until it is earned.

"But if the indebtedness of the city already equals or exceeds the constitutional limit, and the current revenues are not sufficient to pay such indebtedness when it comes into existence, including other expenses for which the city is liable, an indebtedness is thereby created and the constitution is violated. (*Cason v. Lebanon,* 55 N. E. 768; *Laporte v. Gamewell Fire Alarm Teleg. Co.,* 35 L. R. 686, 45 N. E. 588, and cases cited; *Brown v. Corry,* 175 Pa. St. 398.) It is evident that rent for suitable offices for the officers of a city is as much an ordinary and necessary expense as the expense for water and light (*Grant v. Davenport,* 36 Iowa, 396), and that, when the city agrees to pay the rent for said offices annually or monthly the contract does not create an indebtedness for the amount of all the annual or monthly payments. While the rent for suitable offices for city officers is an ordinary and necessary expense, the erection of a city hall or a building for the use of the city officers is not in any sense an ordinary and necessary expense, but an extraordinary one. (*Grant v. Davenport* 36 Iowa, 396.) There is a clear and plain distinction between a contract for the use of rooms or a building for city purposes, and the erection by the city of a building to be used for such purposes. The one is an ordinary and necessary expense, while the other involves municipal ownership of the building or rooms, and the means of furnishing the offices, and is an extraordinary ex-

pense. (*Brown v. Corry,* 175 Pa. 528; *Grant v. Davenport,* *supra.*) Under the contract in this case, however, the city hall is not to be erected by or for the city; but by Mr. Oliver, who is to own the same, the city being the owner of the real estate upon which it is to be erected. The only contract of the city is to pay an annual rent of $7,200, which is admitted to be only a fair rental value for said building, and if the city does not exercise its option to purchase said building at or before the termination of the lease, to sell and convey the real estate at the price named, provided said Oliver exercises his option to purchase the same within six months after the termination of the lease. If neither party exercises the option provided for in said contract within the time fixed, then the city hall building becomes the property of the city. Under said contract the city is under no obligation whatever to pay anything for the erection of said building, or to purchase the same when erected. If it should attempt to exercise its option to purchase said building, but cannot do so without violating the constitutional limitation as to becoming indebted, it may be enjoined from exercising such option. No facts are alleged in the complaint showing that the current revenues of the city will not be sufficient to pay the indebtedness for rent under said contract each year when the same comes into existence, including all other expenses for which the city is liable. The allegations of the complaint do not show, therefore, that said contract creates any indebtedness in violation of the constitution. (*Cason v. Lebanon,* 153 Ind. 567, 55 N. E. 768.)"

It will be borne in mind that no contract has as yet been entered into by the board of county commissioners, and we cannot say what that contract will be, but we must presume that the board will not contract in violation of law; but from the notice it is plain that if a contract shall be made that it will be that some one other than the board of county commissioners or the county shall construct the court

house and jail, to be paid for in annual rental, and we may infer that the contract will provide for the payment of $3,500 per year, and there is nothing in the record which would prove or indicate that such a rental would be unreasonable, or other than only fair reasonable rental value for the building to be erected. There is nothing in the notice from which we can say that the board or county will be under any obligations whatever to pay anything for the construction or erection of the building, but only that if the same is erected that they will rent it at an annual rental, and for a term of ten years, and if the person who shall construct or erect the building shall furnish the same for that length of time, then the county shall become the owner of the property, but we cannot say that in the event that such person shall fail to furnish the building for the term required, then the county is under any obligations or is any way liable to pay for the same. For illustration, in the absence of the contract, in the event that the building shall be constructed, and before the expiration of the term of the contract, the same should be destroyed by fire, and the owner should by reason thereof fail to furnish the building as in his contract required, we cannot say or presume that the county will be liable for the payment of its annual rental for the full term; in fact, we presume that the contract would be so worded that the contrary would be true.

The only contention by counsel for plaintiff in error is that it is apparent that if a contract is made and the buildings erected, at the end of the term of the rental contract the property will become vested in the county; then if the contract shall provide only for rental, and at the expiration of the term that the property did not become the property of the

county, then his argument must fail; in other words, that the board are prohibited from making a contract for the construction and rental of a building more favorable to the county by providing that at the end of the rental term, that the title to the property shall be vested in the county. It is not shown that the contemplated contract will create an indebtedness in violation of the act of congress quoted.

It is alleged in the petition that plans and specifications have not been adopted, and advertisements for bids made as required by the laws of the Territory. While it is true the plans and specifications should first be adopted by the board, and advertisement for bids published for at least thirty days prior to the date set for the opening of bids, and that such advertisements shall give the place where the plans and specifications may be examined, the date on which the bids will be opened, the time for which will be allowed for the completion of the building as required by sec. 36, art. 9, chap. 22, Laws of 1893, as amended by art. 3 of chap. 12, Laws of 1901, page 104, still we cannot say from the evidence now before us that the board will not fully comply with the provisions of this statute; in fact, we must presume that they will.

The order of the district judge refusing the temporary injunction is affirmed, with costs to plaintiffs in error.

Irwin J., who heard the application, not sitting; all the other Justices concurring.