EDITH COCHRAN, WILLIAM PRICE, MAY CLAYTON, JULIAN H. FOARD and MAY B. JANVIER,

*vs.*

THE MAYOR AND COUNCIL OF MIDDLETOWN, a Municipal Corporation existing under the laws of the State of Delaware, and FAIRBANKS, MORSE & Co., a corporation of the State of Illinois.

*New Castle, July* 9, 1924.

"Indebtedness," as used in statutory and constitutional limitations on contractual power of cities, imports obligation to pay.

Option to purchase property at price which would push municipal indebtedness beyond authorized limit imposes no obligation, and hence does not constitute "indebtedness," within statutory or constitutional inhibition, until exercised; liability being conditioned on contingency solely in municipality's control.

Town's agreement to lease lighting and pumping equipment for one year at rental insufficient to raise indebtedness above limit fixed by charter (33 *Delaware Laws, c.* 128, § 20), with option to renew lease or purchase equipment at end of year, *held* not void as incurring indebtedness in prohibited amount.

Wisdom of corporation in engaging to equip electric light plant without assurance that town contracting to lease it for year with option to purchase at

end thereof would eventually buy, and wisdom of town authorities in incurring risk of inability or unwillingness to continue with plant, are not for Court of Chancery to determine in suit to enjoin performance of contract as scheme to circumvent debt limit provision of town charter.

BILL FOR INJUNCTION.    The complainants who are taxpayers of the town of Middletown seek by their bill to restrain the carrying out of a certain agreement already entered into between the Mayor and Council of Middletown, a municipal corporation, and Fairbanks, Morse & Co., a corporation of Illinois.    The facts necessary to be mentioned are as follows: The responsible authorities in the municipality reached the conclusion that a new light and pumping plant was desirable for the town, the old one being of antiquated design and in their judgment unduly expensive to operate.    Having reached this conclusion, the agreement in question was entered into with Fairbanks, Morse & Co. to install on the present site new lighting and pumping equipment of improved design in accordance with detailed plans and specifications.    It is unnecessary to describe the agreement in full.    It provides for a further contract in the form of a lease to be executed between the parties and effective upon the completion of the plant.    The lease is to run for the period of one year commencing May 1, 1924, and the town is to be obligated to pay a monthly rental of $946.40 ($11,356.80 for the year).    The town is to be given the option to lease the plant for a second year at the same rental, and upon the expiration of the second year the town is to be given the option to lease the plant for a third year at a like rental.    The lease is also to provide that if at the end of the first year the town desires to purchase the equipment it may do so upon the payment to Fairbanks, Morse & Co. of $21,598.25 in cash.    If it should desire to exercise its option to renew the lease for the second year, then it is to have the right to purchase the equipment at the end of the second year for $11,140.01.    Should it desire to exercise its option to renew the lease for the third year, then it is to have the right to purchase the equipment at the end of the third year upon the payment of one dollar.

The cause was heard on bill, answers and oral testimony taken before the Chancellor.

*James I. Boyce*, for the complainants.

*Martin B. Burris* and *William S. Hilles*, for The Mayor and Council of Middletown.

*Caleb S. Layton*, of the firm of Marvel, Marvel, Layton and Hughes, for Fairbanks, Morse & Co.

THE CHANCELLOR.   The sole question to be decided is whether the agreement entered into between the Mayor and Council of Middletown and Fairbanks, Morse & Co. is null and void because of the charter provision found in *Section* 20, *Chapter* 128, *Volume* 33, *Laws of Delaware*, being "An act to reincorporate the town of Middletown." The clause in that section which the complainants rely on as invalidating the agreement is as follows:

" 'The Mayor and Council of Middletown' may borrow money for municipal purposes of any character whatsoever, upon the credit of said town, and issue bonds for the payment of the same; but in no case shall the total indebtedness of every kind, exceed ten per centum of the then last assessed value of all the real estate in said town.   *   *   * "

The evidence shows that the last assessed value of all the real estate in Middletown was $1,152,000. The limit of indebtedness fixed by law was therefore $115,200. At the time the contract in question was entered into the outstanding indebtedness of the town was $86,300. The complainants contend that the agreement already entered into constitutes a contract of purchase by which the town agrees to become indebted for the new lighting and pumping plant in a sum not less than nearly $33,000 nor more than about $34,000 according to the time when the option to buy is exercised. The defendants contend on the other hand that there is no obligation on the part of the town to buy the plant at any time, that the utmost extent to which the town's commitment goes is to rent the equipment for one year at the rental of $11,356.80 payable in monthly installments of $946.40. If the complainants are right in their contention, then the agreement will carry the indebtedness of the town beyond the limit fixed by the legislative power of the State and further proceedings under the agreement ought to be enjoined. But if the defendants are correct, then the debt limit will not be exceeded and this court ought not to interfere. The sole question, therefore, is the narrow one of whether

the said agreement creates an indebtedness of thirty odd thousand dollars, or of a little over eleven thousand.

It is not worth while to go through the reported cases in a search for definitions of the terms "debt" and "indebtedness" when used in statutory and constitutional provisions similar in kind to that with which we are here concerned. These definitions when found are too frequently formulated in the light of the peculiar language of the context in which the terms appear to be of service in ascribing to them a universal application. See note in 37 *L. R. A.* (*N. S.*) 1058; 5 *McQuillin, Municipal Corporations,* § 2215; 1 *Dillon, Municipal Corporations* (*5th Ed.*) § 193. An examination of the reported cases discloses that many and varied controversies have arisen concerning the meaning of the term "indebtedness" when used in constitutions and statutes limiting the power of municipalities to incur obligations. These controversies have to do with such questions as the following: Does the term embrace the situation of a purchase by the municipality of property encumbered by mortgage; does it cover obligations running into the future for light, water, services, etc., to be paid for when supplied; does it include obligations for what may be called current expenses, the payment of which current revenues may be amply sufficient to meet; does it necessarily import the idea that a remedy for collection must exist whereby payment may be enforced? These are illustrations of the sort of questions which have been debated in the cases. Whatever might be the views expressed in the numerous decisions touching the particular aspect of the subject before the respective courts for determination, it appears to be everywhere recognized that before an "indebtedness" can be said to exist there must be present the element of an obligation of some kind on the part of the municipality to pay money either immediately or in the future. It is unnecessary for the present purpose to hedge this statement around with qualifications designed to adjust its general import to particular situations that may arise in future controversies, as for instance, to the situation of a municipality which enters into an engagement involving it beyond the debt limit but with ready cash in hand to meet the payment. All that is meant to be emphasized at this point is that the term indebtedness imports an obligation to pay.

If there is no obligation or promise, express or implied, it is inconceivable to think of an indebtedness. While there may be an obligation or promise without an indebtedness within the meaning of the term as used in debt limit provisions, the converse cannot be true, viz., that there can be an indebtedness without an obligation.

It is because of this conception that courts have uniformly held, so far as my investigation discloses, that if the municipality is contingently liable to pay money and the arising of the contingency is solely in its own control and can occur only by its subsequent choice voluntarily made, no indebtedness either present or future can be said to have been created because in such case there is no obligation. An option to purchase falls in the category of contingencies of this nature. An option imposes no obligation. It may or may not be exercised. Accordingly the authorities hold that an option to purchase property at a given price which if immediately exercised would push the municipal indebtedness beyond the authorized limit, will not so long as it remains open constitute an indebtedness within the meaning of the statutory or constitutional inhibition. *Burnham v. Milwaukee, et al.,* 98 *Wis.* 128, 73 *N. W.* 1018; *Windsor v. City of Des Moines,* 110 *Iowa,* 175, 81 *N. W.* 476, 80 *Am. St. Rep.* 280; *City of South Bend v. Reyonlds,* 155 *Ind.* 70, 57 *N. E.* 706, 49 *L. R. A.* 795; *Hay v. Springfield,* 64 *Ill. App.* 671; *Burlington Water Co. v. Woodward,* 49 *Iowa,* 58; *Fidelity Trust & Guaranty Co. v. Fowler Water Co.,* (*C. C.*) 118 *Fed.* 560; *Giles v. Dennison,* 15 *Okl.* 55, 78 *Pac.* 174. If the option is eventually taken up and in doing so the municipality becomes indebted to the forbidden extent the occasion then arises for appeal to the courts. Until such time arrives, however, there can be no ground to maintain that an indebtedness has been incurred in contravention of the prohibition.

Applying these principles to the facts appearing in the instant case, it is clear that the town of Middletown has not incurred an indebtedness in a prohibited amount. The agreement is to enter into a lease arrangement for only one year. It obligates the town to an engagement to pay only $11,356.80, a sum which when added to the existing indebtedness will not raise the total above the ten per centum limit. This is the extent of the obligation

agreed to be incurred.  All that follows thereafter is optional with the town.  It may elect to buy the plant at the end of the year and proceed to do so, provided of course it does not violate its debt limit restriction, or it may elect to exercise its option to demand another lease for a second year at the same rental, provided again that the existing indebtedness has not risen to a point which would forbid it to do so.  Similarly at the beginning of the third year a like choice could be made.  The town might, however, if it chooses, prefer at the end of any year to withdraw entirely from all relations with Fairbanks, Morse & Co. and adopt measures to reinstall its old system which, so far as now appears, it would be possible to do, for there is nothing to show that the old equipment will be junked and disposed of.  All these matters, however, have to do merely with questions of policy which it is not the province of this court to assume to pass upon to the exclusion of the duly constituted authorities of the town.  The sole point to be borne in mind at the moment is that the agreement imposes no obligation on the town to pay out its funds at any time in an amount in excess of its debt limit.  The arrangement does not, as argued by the complainants, obligate the town to the extent of thirty-two or thirty-four thousand dollars.  As indicated the utmost extent of the obligation is a single year's rental of a little over eleven thousand dollars, an amount which the total of its present indebtedness does not prohibit.

The following cases are cited by the complainants as sustaining their position.  *Reynolds v.  Waterville*, 92 *Me*. 292, 42 *Atl*. 558; *Earles v. Wells*, 94 *Wis*. 285, 68 *N. W*. 964, 59 *Am. St. Rep*. 886; *Spilman v. Parkersburg*, 35 *W. Va*. 605, 14 *S. E*. 279; *Hall v. Cedar Rapids*, 115 *Iowa*, 199, 88 *N. W*. 448; *B. & O. S. W. R. Co. v. People*, 200 *Ill*. 541, 64 *N. E*. 148.  These cases have all been examined and nothing is found in any of them which conflicts with the views herein expressed.  In none of them does it appear that an option to buy or to incur an obligation is held to constitute an indebtedness within the meaning of the term as used in such provisions as we are here concerned with.  In all of the cases cited, except the one from 92 *Maine*, the transaction was in substance a present undertaking in the form of a lease or rental contract to make certain designated payments at intervals over a period of

time running into the future.    The undertaking to pay was absolute and in no wise optional.    In the case cited from 92 *Maine* the point decided was that a city cannot evade its debt limitation by using a corporation to hold municipal property and borrow money thereon as the agent of the city, a point which clearly has no bearing in this case.

The complainants insist that the agreement which has been made with Fairbanks, Morse & Co. is but a clever scheme to circumvent the debt limit provision of the town charter.    If the "scheme" creates no forbidden indebtedness it is difficult to discover wherein it may be said to be a circumvention of the charter. It may be that Fairbanks, Morse & Co. is unwise in engaging to equip the plant with no certain assurance that the town will eventually take it off its hands, and it may be that the town authorities are unwise in incurring the risk of not  being able or willing after trial to continue with the new plant.    The town officials, however, after a careful study of the matter have concluded that with the new and modern plant the town can save as against the operating cost of the present antiquated one, as much as eleven thousand dollars a year, nearly the amount of the stipulated rental.    This prospective saving together with other considerations not necessary to mention are the inducements which moved the town officials to enter into the agreement.    These matters, however, are things with which this court has nothing to do.    If the arrangement is a bad one from the business point of view but is unobjectionable in point of legality, this court can supply no remedy.

In the view I have taken of the controlling point in this case it is not necessary to extend this opinion by a discussion of other aspects of it suggested by the solicitor for the defendants.

Let the bill be dismissed with costs on complainants.