No. 12,699.

HEBERER *v.* BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF CHAFFEE ET AL.

(293 Pac. 349)

Decided November 3, 1930.

160

Mr. WILLIAM S. RUSH, for plaintiff in error.

Mr. WALLACE SCHOOLFIELD, Messrs. PERSHING, NYE, TALLMADGE, BOSWORTH & DICK, for defendants in error.

Mr. OMAR E. GARWOOD, Mr. EVERETT BELL, for intervener.

*En Banc.*

Mr. Justice Butler delivered the opinion of the court.

Max Heberer, a taxpayer, sued the board of county commissioners of the county of Chaffee, Ray Lines Post No. 64 of the American Legion and Joseph D. Grigsby and Company, to enjoin them from performing a contract and to have the contract annulled. Charles Matlock, also a taxpayer, intervened. The court sustained the defendants' demurrers to the complaint and the intervener's petition. The plaintiff having elected to stand upon his complaint and the intervener having elected to stand upon his petition, judgment was rendered in favor of the defendants. The plaintiff and the intervener seek a reversal of the judgment.

The county seat of Chaffee county having been removed from Buena Vista, where there is a courthouse, to Salida, where there is none, the county commissioners found themselves under the necessity of providing a suitable place for the transaction of the business of the district court and of the county. Section 8682, C. L., confers upon county commissioners, where there are no county buildings, power to provide suitable rooms for county purposes. Section 5656, C. L., requires district courts to be held at the county seats of the several counties. By section 8829, C. L., the clerks of district and county courts are required to keep their respective offices at the county seat and in the office or place provided by the county. Section 471, Code of Civil Procedure, provides that terms of court shall be held "at such times and places as provided by law," and that, " If a room for holding the court be not provided by the county, together with attendants, fuel, lights and stationery, suitable and sufficient for the transaction of business, the court may direct the sheriff to provide such room, attendants, fuel, lights and stationery, and the expense shall be a county charge." By section 8658, C. L., each county is

given power "to make all contracts, and do all other acts in relation to the property and concerns necessary to the exercise of its corporate or administrative powers."

In an effort to perform the duty imposed upon them by law, the county commissioners entered into a contract with Ray Lines Post No. 64, American Legion, whereby the Legion Post leased to the county for 25 years a parcel of land in Salida, together with the building to be erected thereon. The lessor agrees to erect a building suitable for a courthouse, the plans to be satisfactory to the lessee, the cost of both building and land not to exceed $100,000. The money for the purchase of the land and the erection of the building is to be derived from the sale of bonds issued by the Legion Post and secured by its trust deed of the property. Such bonds as are "25-year bonds" are to be "optional after 10 years." The lessor reserves the right, during the term of the lease, to use a part of the building to be known as the Legion hall. The rent is to be $670 per month, the lessee agreeing to provide therefor in its annual levy and appropriation resolutions. The lessor agrees to apply the rental to the payment of the bonds and the interest thereon. The rent is to be paid by the lessee to the trustees under the deed of trust securing the bonds. The lessee is to pay all taxes and assessments and for insurance, power, heat, light, water and repairs. The lessee is given the option to purchase the property in ten years, or at any time thereafter during the term of the lease, upon paying the principal and accrued interest on all the bonds then outstanding, less the amount of any sinking fund then existing. Upon the lessee's thus purchasing under the option, the property is to be conveyed to the lessee free and clear of all liens and incumbrances. If the lessee exercises its option to purchase, or if it constructs another courthouse, the lessee, to quote from the intervener's brief, "must rent a part to the Legion upon rental terms then to be agreed upon." Joseph D. Grigsby and Company made an agreement with the Legion Post to purchase the bonds,

the lease to be assigned to them by the Legion Post as additional security. In short, the plan contemplates that the rentals (if the option to purchase is not exercised) will be sufficient to retire the bonds, and shall be used by the lessor for that purpose, and when the bonds are paid the property shall be conveyed to the lessee. It is alleged that the question of making the lease was not submitted to a vote of the qualified electors of the county. Neither in the complaint nor in the petition is it alleged that $670 per month is an excessive rental.

■ 1. It is said that the lease creates an indebtedness of $201,000, the aggregate of the rentals for twenty-five years, and that as the incurring of such indebtedness has not been authorized by a vote of the qualified electors, the lease is void. According to the pleadings, the assessed valuation of property in the county is $9,582,685 and the bonded indebtedness is $135,000. If, as contended by the plaintiff and the intervener, the lease creates an indebtedness for the aggregate amount of the rentals for twenty-five years, section 6, article 11, of the state Constitution is violated and the lease must fall. We do not think that such an indebtedness is created.

*Denver v. Hubbard,* 17 Colo. App. 346, 68 Pac. 993, concerned a contract whereby a city agreed to pay a stipulated price per year for ten years for electric lights. It was doubted whether this created any indebtedness. "There is much force," said the court, "in the contention that a contract like this does not create a debt within the meaning of the Constitution * * *." The court, however, did not pass upon the question.

In *Shields v. Loveland,* 74 Colo. 27, 218 Pac. 913, the city of Loveland issued bonds to be paid out of the revenue derived from the operation of a municipal light plant. Of course, the bonds, being payable only out of such revenue, did not create an indebtedness within the meaning of section 8, article 11, of the Constitution, or section 8987, C. L. But there was this provision: "For street lighting purposes the city of Loveland hereby irre-

vocably covenants with each and every holder of said revenue bonds issued under the provisions of this ordinance, that it will pay into said fund not less than five thousand dollars ($5,000) per annum.'' Such payments were to be made for not less than ten years. Concerning this provision, we said: ''Fundamentally this is a method of paying annually for street lighting annually furnished, and it has been held that such contracts do not create debts within the meaning of laws like those now in question. *Leadville Gas Co. v. Leadville,* 9 Colo. App. 400, 49 Pac. 268; *Denver v. Hubbard,* 17 Colo. App. 346, 68 Pac. 993; *Varparaiso v. Gardner,* 97 Ind. 1, 49 Am. Rep. 416; *Uhler v. Olympia,* 87 Wash. 1, 14, 151 Pac. 117, 152 Pac. 998.'' We held that the contract did not create an indebtedness within the inhibition of the Constitution or the statute.

*Giles v. Dennison,* 15 Okla. 55, 78 Pac. 174, involved a contract for the construction of a courthouse and jail, and the payment of an annual rental for ten years, at the end of which time the title was to vest in the county. The contract was made pursuant to a territorial statute. The question was whether the contract violated section 4 of an act of congress of July 30, 1886, 24 Statutes at Large, page 171, reading: ''That no political or municipal corporation, county, or other subdivision in any of the Territories of the United States shall ever become indebted in any manner or for any purpose to any amount in the aggregate, including existing indebtedness, exceeding four per centum on the value of the taxable property within such corporation, county, or subdivision, * * * and all bonds or obligations in excess of such amount given by such corporation shall be void. * * *.'' If the contract created an indebtedness in a sum equal to the aggregate amount of the rentals for the full term for which the contract was to run, it would be void as coming within the inhibition of the act of congress. The court held that such an indebtedness was not created, and that the contract was valid.

In *South Bend v. Reynolds,* 155 Ind. 70, 57 N. E. 706, 49 L. R. A. 795, it was held that where the current revenues of the city would be sufficient to pay the rent each year, together with all other expenses for which the city was liable, a city did not become indebted beyond its constitutional limit by a contract under which a person was to erect a city hall upon land owned by the city, the hall to be leased to the city at an agreed and fair rental for a term of years, with the option to purchase the building, or, if such option was not exercised, with an option to the lessor to remove the building or buy the land from the city at its appraised valuation. The court said (p. 74) : ''No facts are alleged in the complaint showing that the current revenues of the city will not be sufficient to pay the indebtedness for rent under said contract each year when the same comes into existence, including all other expenses for which the city is liable. The allegations of the complaint do not show, therefore, that said contract creates any indebtedness in violation of the Constitution.''

▉ As the county does not own a courthouse or other suitable building, the only way in which it can furnish a place in which the business of the district court and the county can be transacted is by renting such a place. The rental provided for in the lease is to be paid monthly. Such expense is as much a necessary current expense of the county as rentals for light and water are current expenses of a city. If the monthly rentals, together with all other current expenses, are paid out of the current revenues, there is no indebtedness incurred for such expenses within the constitutional inhibition. Upon those who seek relief on the ground that an indebtedness has been incurred in excess of the constitutional limit rests the burden of showing that such an indebtedness has been incurred. As there is no showing in the complaint or in the petition in intervention that the current revenues will not be sufficient to meet all current expenses, including such rentals as they accrue, the pleadings fall short of

the requirements in this respect. *South Bend v. Reynolds, supra.*

If the county should seek to exercise the option given to it to purchase the property in ten years, or thereafter during the term of the lease, it must observe the requirements of the law. If it should attempt to act contrary to the law—and we assume, of course, that it will not—the courts would afford adequate relief.

2. Section 8694, C. L., prohibits the making, on behalf of a county, of any contract or the creation of any liability unless an appropriation shall have been previously made concerning the expense. It is said that in the present case there was no appropriation providing for the rentals for twenty-five years (the full term of the lease), and that for that reason the lease is void. We cannot uphold this contention. The rent, as we have seen, is to be paid monthly. It is a current expense and is to be provided for, the same as the other current expenses, by annual levy and appropriation.

The Denver charter contained this provision: "Neither the city council nor any officer of the city shall have authority to make any contract, or do anything binding on the city, or imposing upon the city any liability to pay money, until a definite amount of money shall have been appropriated for the liquidation of all pecuniary liability of the city under any such contract, or in consequence thereof * * *." In *Denver v. Hubbard,* 17 Colo. App. 346, 68 Pac. 993, it was held that where the city charter expressly empowered the city council to provide for lighting the streets and public buildings, a contract providing for the lighting of the streets for a term of ten years is not invalid because of a failure of the city council to make a prior appropriation to cover the liability created thereby for the entire term of the contract, but it is sufficient if an appropriation is made each year to cover the annual payment for that year. See also *Leadville Gas Co. v. Leadville,* 9 Colo. App. 400, 49 Pac. 268.

3. It is said that the lease is void because it ex-

tends beyond the terms of office of the present commissioners; that commissioners cannot bind their successors. *Robbins v. County Commissioners of Boulder County,* 50 Colo. 610, 115 Pac. 526, is cited in support of the contention. That case states the general rule. In that case we applied the rule to a situation wholly unlike that now presented. There the county commissioners attempted to accept a devise that required them to maintain forever a hospital for the benefit of a particular class. They were not only under no statutory duty to maintain a hospital of that character, but, as we held, they had no power to do so. In the present case, as we have seen, the county commissioners not only had the power, but they were under a statutory duty, to provide suitable rooms for the transaction of district court and county business.

There are some contracts that do not come within the reason of the general rule we are discussing. In *Liggett v. Board of County Commissioners of Kiowa County,* 6 Colo. App. 269, 40 Pac. 475, the court said (p. 275): "The county is a continuous organization. Many contracts can be conceived and suggested which of necessity could not be performed during the term of office of an entire board of county commissioners. To hold contracts invalid because part or all of a board cease to exercise public functions would be to put these corporations at an enormous disadvantage in making the contracts which are essential to the safe, prudent, and economical management of the affairs of a county." In that case Liggett sued on a contract employing him as purchasing agent and public printer for one year. Within the year two of the three commissioners went out of office, and for that reason the trial court held that the contract was void. Holding to the contrary, the court of appeals reversed the judgment.

A Montana statute authorized county commissioners to lease real property for the use of the county. Certain county commissioners made a contract whereby an owner of a building agreed to remodel the building and lease it to the county for four years, and the county agreed to

pay a stipulated rental for that length of time. The county was given the option to purchase the property during the existence of the lease. There, as here, the contention was made that as the lease was to extend beyond the terms of office of the commissioners who made the contract, the contract was void. The court sustained the validity of the contract. *Bennett v. Petroleum County*, 87 Mont. 436, 288 Pac. 1018.

■ Section 8686, C. L., providing that "No contract for the furnishing of such books, stationery, records, printing, lithographing or other supplies shall be made for more than one year at any one time," has no application here. Applying the principle of ejusdem generis, the words "or other supplies" mean other supplies similar to those specified. *Denver v. Taylor*, 88 Colo. 89, 292 Pac. 594, just decided; *Gibson v. People*, 44 Colo. 600, 99 Pac. 333.

To furnish rooms for the transaction of district court and county business necessitates the expenditure of a substantial sum of money, either in the erection of a new building or in the alteration of one already existing. A person cannot be expected to make the necessary expenditure in the absence of an agreement on the part of the county to rent the building for a term of years. Any other arrangement would be wholly impracticable.

The objection discussed in this paragraph cannot be sustained.

4. The remaining objections do not require more than brief notice.

■ ■ The arrangement does not amount to a donation to the Legion Post, nor is it a benevolence. The lessor has a right to reserve a room for its use during the term; and the provision that if the lessee exercise its option to purchase, or if it constructs another courthouse, it will rent a part of the building to the Legion, "upon rental terms then to be agreed upon," is so indefinite as to be incapable of enforcement.

The county does not become liable for the retirement

of the bonds, or for any other debt of a private corporation. It does not enter into a joint enterprise resembling a partnership with the Legion Post and Grigsby and Company, or either of them, or pledge its credit in aid of either of them.

The judgment is affirmed.

MR. CHIEF JUSTICE WHITFORD and MR. JUSTICE CAMPBELL did not participate.